**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

HERMAN WILLIAMS,

        Plaintiff,

    v.

LUCIAN TESSMANN, *et al.*,

Case No. 1:23-cv-05945

Hon. Judge Sunil R. Harjani

Hon. Mag. Judge Daniel P. McLaughlin

---

**PLAINTIFF'S SUPPLEMENTAL BRIEFING IN SUPPORT OF HIS MOTION TO
RECONSIDER THE COURT'S NOVEMBER 21, 2024, ORDER DENYING HIS
MOTION TO AMEND**

---

Plaintiff Herman Williams, by and through his counsel, Romanucci & Blandin, LLC, and Hart McLaughlin & Eldridge, LLC, pursuant to the Court's March 19, 2025, Order (Doc. 208), supplements his briefing in support of his motion for reconsideration of this Court's November 21, 2024, Order (Doc. 193) denying Plaintiff's Motion for Leave to Amend his Complaint (Doc. 166), as follows:

## INTRODUCTION

The Court instructed the parties to address the issue of whether "allowing a Rule 15 amendment is appropriate in light of the potential conflict of interest issues, and also [to] consider the provisions of Rule 25 on substitution of parties, if applicable, with a "focus on case law in the 7th circuit and its district courts that either support or do not support allowing the amendment Plaintiff seeks here." (Doc. 209.)

As an initial matter, Rule 25 is inapplicable here. Plaintiff need only satisfy Rule 15(a)(2)'s liberal requirements for amendment. And while the Seventh Circuit has not addressed the precise question of the impact of the potential conflict on satisfying Rule 15's amendment standard, a review of Plaintiff's amendment here — and the facts relating to Ms. Huller's appointment — demonstrate

1

that the potential conflict does nothing to alter the conclusion that Plaintiff satisfies Rule 15's amendment requirements (on which there is abundant case law).

First, Plaintiff's appointment of Ms. Huller was not evidence of delay or dilatory motive. As Plaintiff has described in detail in briefing and oral argument, Plaintiff's counsel worked diligently to appoint Ms. Huller as administrator under novel and difficult circumstances.

Second, Plaintiff's seeking the appointment of Ms. Huller (and amendment) was not and is not in bad faith. Plaintiff has done so as a necessity of naming a viable party, when Defendants and Estate heirs refused to participate, and all other options proved unavailable. Plaintiff is not seeking to hijack anyone's defense. Plaintiff is not seeking any money from the Estates and is not conducting any discovery on the Estates. Plaintiff will not move for default on the Estates. And Plaintiff is willing to facilitate Defendants' representation of the Estates and substitution of another administrator by Defendants after amendment. Plaintiff simply needs a viable Defendant timely named for these serious claims.

Third, the proposed amendment is not futile; any potential conflict does not change that. The probate court has deemed Ms. Huller an appropriate representative, and one such court has already denied the attempt to vacate that appointment. As for any potential conflict, Defendants Lake County and the Village of Gurnee (hereinafter "the Objecting Defendants") have not even raised it in the appropriate forum: the probate court in which they challenge Ms. Huller's appointment.

Fourth, there is no actual prejudice that will result to Objecting Defendants from this amendment. To find prejudice, one would have to assume Ms. Huller will violate her obligations as administrator. That is inappropriate as a matter of law. And even if Ms. Huller did, the Court and Defendants would have avenues to cure that prejudice (*e.g.*, seeking Ms. Huller's removal as administrator and striking any inappropriate actions she took). Plaintiff will not move for default (and the Court would have occasion to reject it even if he did). Plaintiff will not conduct any discovery on

2

the Estate Defendants. And most importantly, Defendants have yet to say whether they will represent the Estate Defendants on amendment. Their position in this case, the probate court, and their defense and indemnification obligations suggests that they may. If they do, no conflict would exist, as they can substitute an administrator. Accordingly, Objecting Defendants should be ordered to definitively advise the Court whether they will defend the Estate Defendants if Plaintiff's Motion is granted.

In short, there is no case law that supports denying leave to amend here because of the potential conflict identified. Rather, because justice so requires that Plaintiff have an avenue to assert his timely, viable claims against the Estate Defendants, the Court should grant Plaintiff's motion.

## ARGUMENT

### I. Rule 25 is inapplicable.

In part, the Court ordered that this briefing "consider the provisions of Rule 25 on substitution of parties, if applicable." (Doc. 209.) Rule 25 is inapplicable here. "Federal Rule of Civil Procedure 25(a)(1) governs the substitution of a *party* who has died," and "provides that if the claim on which the suit is based survives the death . . . the court may order the substitution of the proper party, ordinarily the personal representative of the party who has died." *Hicks v. Young*, No. 10 C 3874, 2012 WL 1755735, at *1 (N.D. Ill. May 15, 2012) (quoting *Atkins v. City of Chi.*, 547 F. 3d 869, 870-71 (7th Cir. 2008)) (emphasis added). However, because "[a] deceased person cannot be a party to a suit," courts in this circuit hold that "Rule 25(a)(1) does not apply when, as is the case here, a person for whom substitution is sought died before being named a party." *Sopron v. Cassidy*, No. 19-cv-08254, 2022 WL 2316204, at *3 (N.D. Ill. June 28, 2022).

Like the defendants in *Sopron*, the Estate Defendants each died before Plaintiff's 42 U.S.C. § 1983 claims against them had even accrued, long before Plaintiff sought to name either as a party to

this action. Accordingly, Rule 25(a)(1)'s provisions regarding substitution of parties does not have application here.[1]

## II.    Plaintiff's proposed amendment is appropriate under Rule 15.

### A.    Plaintiff's proposed amendment need only satisfy Rule 15(a)(2)'s liberal standard for amending pleadings.

While Rule 25 is inapplicable, "[t]he Federal Rules of Civil Procedure are otherwise silent about the proper procedure" for suing a defendant that is deceased prior to the filing of a complaint. *Sopron*, 2022 WL 2316204, at *3. However, because a party's Rule 17 capacity to be sued is determined "by the law of the state where the court is located," courts in the Northern District of Illinois assessing the viability of § 1983 claims asserted against defendants who died before the suit was filed have looked to Illinois statutory provisions governing the death of a party. *Id.* at *4 (examining 735 ILCS 5/13-209 ("Section 209") to assess the plaintiff's motion to appoint a special representative to defend his claims against the decedent-defendant's estate); *Deleon-Reyes v. Guevara*, No. 18-cv-02312, 2019 WL 1200348, at *1 (N.D. Ill. Mar. 14, 2019) (same); *Amor v. John Reid & Assoc.*, No. 20 C 1444, 2021 WL 825609, at *2 (N.D. Ill. Mar. 4, 2021) (same); *Harris for Est. of Harris v. Zuley*, No. 23 C 14220, 2024 WL 1739913, at *2 (N.D. Ill. Apr. 23, 2024) (same).

However, Section 209 is also inapplicable here. As the court in *Rivera v. Lake County* aptly observed, Section 209 solely "exists to extend the statute of limitations." 974 F. Supp. 2d 1179, 1198 (N.D. Ill. 2013). Here, Plaintiff sought leave to amend his complaint to name the viable Estate Defendants prior to the expiration of the statute of limitations. Like the *Rivera* plaintiff, "[b]ecause

---

[1] However, to the extent Rule 25(a)(1)'s "proper party" jurisprudence is instructive here, where an individual has been appointed the personal representative of a decedent-defendant's estate by a state probate court, that individual is the "proper party" for purposes of substitution under Rule 25. *Tucker v. Mitchell-Lawshea*, No. 17 CV 05883, 2019 WL 1057384, at *2 (N.D. Ill. Mar. 6, 2019) (citing *Atkins v. City of Chi.*, 547 F.3d 869 (7th Cir. 2008); *Relf v. Shatayeva*, 2013 IL 114925, ¶¶ 34-35) ("Ordinarily, the 'proper party' is the personal representative of the party who has died . . . A 'personal representative' for this purpose 'refers to someone appointed pursuant to a petition for letters of office' to 'settle and distribute an estate,' *i.e.*, as an executor or administrator.").

Plaintiff's suit was brought before the statute of limitations expired, Plaintiff does not need to use [Section 209] to extend the statute of limitations." *Id.*; *see also Killian v. Concert Health Plan*, 742 F.3d 651, 662 (7th Cir. 2013) (observing that Illinois courts have yet to reject the "conclusion that a claim may be brought against an estate if the time for bringing such claims has not expired"). Accordingly, Plaintiff's proposed amendment need only satisfy Rule 15(a)(2)'s liberal standard for amending pleadings.

Because Plaintiff has shown the absence of "undue prejudice to the opposing party" or "undue delay, bad faith, or dilatory motive on the part of the movant," and because his proposed amendment is not "futile," this Court should grant him leave to file his Third Amended Complaint. *Triteq Lock & Sec. LLC v. Innovative Secured Sols., LLC*, No. 10 C 1304, 2011 WL 3203303, at *2 (N.D. Ill. July 21, 2011) (citing *Sides v. City of Champaign*, 496 F.3d 820, 825 (7th Cir. 2007)). The potential conflict raised does nothing to alter that conclusion.

### B. Plaintiff's proposed amendment satisfies Rule 15(a)(2).

#### 1. The appointment of Ms. Huller is not evidence of undue delay or dilatory motive.

The appointment of Ms. Huller a personal representative of the estates was the result of significant diligence on the part of Plaintiff's counsel. Plaintiff's efforts in this respect are detailed in prior briefings relating to his seeking amendment and reconsideration. Plaintiff will not belabor them again here.

#### 2. The appointment of Ms. Huller or this amendment is not bad faith.

There was no bad faith on Plaintiff's part in seeking Ms. Huller's appointment. In his papers to appoint Ms. Huller, Plaintiff identified himself as the petitioner and explicitly described his interest as "a plaintiff in a lawsuit *against the estate*." (Group Ex. A, Petitions for Letters of Administration (emphasis added).) Plaintiff's petitions each expressly nominate "Annette Huller, One South Dearborn, Suite 1400, Chicago, Illinois 60603" to serve as administrator of the Estate Defendants'

estates, i.e., Annette Huller at the Plaintiff's law firm's address. (*Id.*) Plaintiff's counsel supported the petitions on Plaintiff's behalf, and he listed the same address and suite number that he provided for Ms. Huller. (*Id.*) As Plaintiff has explained in prior briefing and in oral argument before the Court, Ms. Huller's appointment was sought after Plaintiff: (1) reached out to the Defendants in this litigation for their interest in representing the estate; (2) contacted former administrators of the estate to seek their interest; (3) served notice on all heir/family members of the estates to give them an opportunity to intervene; (4) sought private lawyers/law firms to serve in capacity as administrator; and (5) sought the intervention of the Cook County Public Administrator – all to no avail.

To obtain the appointment, Plaintiff and his attorneys averred by affidavit that they would not seek one penny from the estate in the litigation. The appointment was done in good faith, as is the amendment, solely to have a viable entity in the case to pursue Plaintiff's claims. Plaintiff has, at all times, been willing – and remains willing – to let anyone else substitute as administrator.

The Illinois probate courts appointed Ms. Huller, imbuing her with the duty to "uphold [her] fiduciary relationship to the Estate's beneficiaries and to act in the utmost good faith to protect their interests, exercising at the very least that degree of skill and diligence any reasonably prudent person would devote to her own personal affairs." *Will v. Northwestern Univ.*, 378 Ill. App. 3d 280, 292 (Ill. App. (1st Dist.) 2007). In short, the appointment of Ms. Huller or the proposed amendment does not pose an issue of bad faith. The potential conflict does nothing to change that.

### 3. Ms. Huller's appointment, or any potential conflict, does not make the proposed amendment futile.

Nothing about Ms. Huller's appointment makes the proposed claims against the Estates futile, including any potential conflict.

Ms. Huller "has a fiduciary obligation to all of the individuals having an interest in the decedent's estate, including heirs and creditors." *In re Est. of Cappetta*, 315 Ill. App. 3d 414, 429 (Ill. App. (2d Dist.) 2000). The primary role of an administrator appointed to represent an estate is "to

conserve the personal assets of the estate, including the collection of all debts due to the decedent; to pay all debts and taxes owed by the decedent and her estate; and to properly distribute the residue among the heirs at law according to . . . the statute of descent and distribution." *Johnson v. Darren Findling Law Firm, PLC*, No. 22-cv-5517, 2023 WL 5289338, at *10 (N.D. Ill. Aug. 17, 2023). The administrator's duty to conserve the assets of the estate extends to litigation asserted against the estate, and to the extent litigation threatens to disturb the assets of the estate, the administrator has a duty to defend against that claim. *See In re Est. of Knott*, 245 Ill. App. 3d 736, 739 (5th Dist. 1993). However, the practical reality here is that Ms. Huller will not perform any of these functions because Plaintiff is not seeking Estate assets and is only seeking insurance or indemnity recovery, as previously discussed. There are no assets to conserve, protect, recover, or distribute whatsoever — the only role is to act as the named administrator in the litigation and to pursue and cooperate in its defense. *In re Est. of Knott*, 245 Ill. App. 3d 736, 739 (Ill. App. (5th Dist.) 1993); *Malone v. Nielson*, 474 F.3d 934, 937 (7th Cir. 2007).

The fact that Ms. Huller works at the Plaintiff's counsel's law firm as an office manager is not incompatible with her role. Indeed, Illinois courts have adopted the "general rule" that an adverse interest does not disqualify an administrator "[a]bsent unusual and extraordinary circumstances[.]" *In re Kuhn's Est.*, 87 Ill. App. 2d 411, 418 (2d Dist. 1967); *First Nat. Bank of Moline v. Muscio*, 5 Ill. App. 3d 216, 217 (3d Dist. 1972) (citing with approval *Matter of Brown*, 204 Ill. App. 596 (3d Dist. 1917), in which an administrator was appointed to administer two estates with claims against the other). For example, in *Estate of Abell*, the Illinois Supreme Court affirmed an order granting a petition to remove the independent administrator of an estate where the administrator "would be asking the court for an order of sale of the real estate to pay creditors and, at the same time, as heirs-at-law of the decedent, would be resisting the application of themselves, as administrators." 395 Ill. 337, 345-46 (1946). Likewise, in *Storer's Estate*, an Illinois appellate court determined that the appointed administrator

could not properly control the wrongful death litigation brought on behalf of the estate to recover for the death of the decedent, as he was a potential defendant in that wrongful death action. 131 Ill. App. 2d 1049, 1054 (Ill. App. 1971). This "conflicting interest," the court held, required appointment of a special administrator "with authority to make all claims or file any suits that may be necessary to seek recovery against anyone liable for the death of decedent." *Id.*

Ms. Huller's concurrent employment and her appointment as administrator of the Estate Defendants' estates do not present the kind of "inconsistent position" that Illinois probate courts have rejected in *Abell* and *Storer*. Ms. Huller is an officer manager who has not had, and will of course not have in the future, any substantive involvement in this matter for Plaintiff. She will not disclose privileged information of the Estate Defendants, as to do so would be inconsistent with her duty to cooperate with its defense.

The absence of any conflict supports the probate courts' appointment of Ms. Huller and likely explains why, as Plaintiff has pointed out: (1) Kimberly Garofalo's challenge to Ms. Huller's appointment in Lake County Circuit Court — which was denied and is being appealed — does not even raise the issue of conflict in her arguments; and (2) Lake County's pending attack on Ms. Huller's appointment in Cook County raises the issue in less than a page as a last argument in its brief. Cook County, who objected to this amendment as well, has not attacked the appointments at all and did not appear to argue this motion.[2]

To the extent the Court remains concerned about the practicalities of Ms. Huller's defense, such as retaining and compensating legal representation for the Estate Defendants in this action (as raised in oral argument), Plaintiff responds in several ways. As an initial matter, there is no "conflict" presented by Ms. Huller's inability to pay counsel. More importantly, Defendants very likely have an

---

[2] It is noteworthy that Garofalo and Lake County have specifically employed firms that handle probate matters to challenge the appointments. That their counsel chose not to advance the "conflict" argument speaks volumes to the weakness of the position under Illinois law, as is clear from the above.

obligation to pay for counsel. Under 745 ILCS 10/2-302, "[i]f any claim or action is instituted against an employee of a local public entity based on an injury allegedly arising out of an act or omission occurring within the scope of his employment as such employee, the entity may elect to . . . appear and defend against the claim or action." 745 ILCS 10/2-302(a); *Ellis v. City of Calumet City*, No. 10 C 7238, 2011 WL 4382452, at *4 (N.D. Ill. Sept. 15, 2011). Indeed, Defendant-Objector Village of Gurnee, who employed Defendant Gregory Garofalo, has already elected to appear and defend Defendant Garofalo's estate, and it has since this case was filed in 2023. (Doc. 12, Waiver of the Service of Summons to Estate of Gregory Garofalo; Doc. 38, Gurnee Defendants' Answer and Affirmative Defenses to Plaintiff's Complaint.)

Defendant-Objector Lake County, on the other hand, entered into various agreements "for the purpose of providing medical examinations and case consultations on behalf of the Lake County Coroner" with Estate Defendant Nancy Jones, whose primary employment was with Cook County, over the course of her career. (Ex. B, 12187 Pathologist Agreement Between Lake County Coroner's Office and Nancy L. Jones, M.D., DEFS 9223.) In 2012, Lake County and Defendant Jones agreed that Lake County "shall defend and indemnify [Jones] for bodily injury and/or personal injury claims from civil lawsuits arising from the services provided by [Jones] under this Agreement." (*Id.*, at DEFS 9226.)

Neither Lake County nor Cook County have produced documents definitively establishing the framework through which Defendant Jones provided her services to Lake County for the autopsy of Penny Williams on September 26, 1993, nor the terms of her employment with Cook County and Lake County at the time of the autopsy or her testimony at trial. However, given: (1) Lake County later agreed to defend and indemnify Defendant Jones in any civil action arising from her work for Lake County, (2) Defendant Jones provided her services here for Lake County's benefit, (3) and Lake County has put forth the time and expense to challenge both Plaintiff's Motion in this Court and

Plaintiff's petition in the Cook County probate court overseeing Defendant Jones's estate (including by hiring separate probate counsel), Lake County may elect to appear and defend Defendant Jones's estate. Moreover, provided the Village of Gurnee and Lake County appear and defend the Estate Defendants, Ms. Huller lacks the authority to decline their representation or to elect alternative representation. *Ellis*, 2011 WL 4382452, at *4 ("Calumet City has decided to exercise its statutory authority to appear and defend Officer Picicco . . . Officer Picicco [] has cited no authority for the proposition that an officer may refuse to be represented by his public-entity employer and retain his own counsel (at his expense)."). Indeed, Ms. Huller would welcome Defendants doing so, as Plaintiff would welcome any substitute administrator for the Estates.

In short, Ms. Huller's appointment, including any potential conflict, and the proposed amendment, do not make the proposed claims against the Estate Defendants futile.

### 4. The potential conflict does not supply prejudice that supports denial of the motion for leave.

Defendants have failed to clearly articulate prejudice that will result from this amendment. For one thing, these Defendants may very well represent the Estates upon amendment and may choose to substitute an administrator if they do (which Plaintiff welcomes). In light of its potential to cure the conflict issue raised by the Court, these Defendants should be required to disclose their position on their defense and indemnity obligations for the Defendant Estates to the Court. At the March 19, 2025, hearing before this Court, counsel for Lake County was unable to answer whether Lake County would appear and defend Defendant Jones's estate, instead stating only that "I think there would have to be discussions between the counsel for Cook County, who aren't here today."[3] (Ex. C, Mar. 19, 2025 Hearing Tr., at 33:1-19.) Neither Defendant Village of Gurnee nor Lake County have expressly communicated to the Court that it has or will decline to appear on behalf of the Estate Defendants.

---

[3] Plaintiff also observes that Defendants Village of Gurnee and Lake County can mitigate the prejudice they posit by appearing and defending the Estate Defendants.

(*Id.*, at 22:2-7; 33:17-19.) Since counsel for Defendant Gurnee has represented the Garofalo Estate throughout this litigation and has not raised the issue of conflict in the probate court, it seems likely that they would represent the Estate upon amendment.[4] Given Cook County and/or Lake County's potential indemnification obligations, as discussed above, and their paying probate counsel to challenge the Jones appointment, it seems likely that they may represent the Jones Estate as well.

More importantly, Defendants have had repeated opportunities to articulate prejudice that precludes this amendment under Rule 15. However, Defendants have submitted only that "[i]t is axiomatic that an independent administrator connected to the party suing another party creates a conflict of interest[.]" (*See* Doc. 187, at p. 9.) But Defendants' unsubstantiated claimed prejudice based on conflict — while effectively not raising the conflict in the appropriate probate forum – necessarily assumes they won't step in for the Estate and defend it (thereby controlling the administrator) and that, in any event, Ms. Huller *will* breach her fiduciary duty to the Estate Defendants. This is improper, as Defendants have failed to point to any basis supporting such a conclusion beyond the simple fact that Ms. Huller is employed as an office manager for Plaintiff's counsel. *Clay*, 608 F. Supp. at 303.

Courts in the Seventh Circuit have declined to take action with respect to conflicts of interest where the party claiming prejudice fails to present a substantial basis to find "that *actual*, rather than merely potential, conflicts of interest are afoot." *Guillen v. City of Chi.*, 956 F. Supp. 1416, 1422-23 (N.D. Ill. 1997); *see also Ellis*, 2011 WL 4382452, at *4-5 (granting Calumet City's motion for substitution of counsel, authorizing counsel for Calumet City to represent the officer-defendant over his objection that such representation would constitute a conflict of interest, even where the officer-defendant had previously been the plaintiff in a suit against the city and the same counsel ordered to represent him in this action). In the context of purported attorney-client conflicts, "[w]ithout more,

---

[4] Plaintiff has been informed that the well-known insurance defense law firm of Clausen Miller, PC, will be representing Ms. Garofalo in her appeal of the probate court's denial of her attempt to vacate Ms. Huller's appointment.

however, that potential is insufficient to compel withdrawal or disqualification." *Id.* (citing *Clay v. Doherty*, 608 F. Supp. 295, 303 (N.D. Ill. 1985)). Indeed, "[v]ague and general inconsistencies of position giving rise to hypothetical conflicts in the mind of an opposing party will not justify so drastic a measure as disqualification." *Id.*

Moreover, remedies far less drastic than barring Plaintiff from pursuing otherwise timely and viable claims are available to cure any harm to Defendants in the event that Defendants' claimed prejudice materializes. "In addition to the obligations the administrator owes to the estate's beneficiaries, the administrator has legal duties to the court." *Will*, 378 Ill. App. 3d at 292. Illinois probate courts have explained that this is because it is the court that "is ultimately in control of the estate, not the personal representative," such that the "personal representative in the collection and management of the estate is an agent of the court subject to the court's control and direction." *In re Est. of Lashmett*, 369 Ill. App. 3d 1013, 1017 (4th Dist. 2007). "Accordingly, the administrator's conduct is subject to review by the court," which has wide discretion to order remedial measures. *Will*, 378 Ill. App. 3d at 292.

Plaintiff will not move to default the Estate Defendants under any circumstances, and the Court is within its discretion to reject such an attempt even if he did (which, again, he won't). Indeed, Plaintiff's concern is timely filing his claims. Plaintiff is amenable to working with all parties and courts to substitute another administrator after this amendment is granted.

In light of the viability of amendment, lack of bad faith or delay, and remedies available to protect Defendants from undue prejudice, "denying Plaintiff the opportunity to amend his complaint to reflect the proper defendants would amount to a fundamental wrong." *See Johnson v. Dye*, No. 3:19-cv-00444-GCS, 2021 WL 3545319, at *3 (S.D. Ill. Aug. 11, 2021) (granting Rule 15(a)(2) motion for leave to amend complaint asserting § 1983 claims to add defendants responsible for effectuating requested injunctive relief even though the deadline to amend had passed, as "these proposed

defendants are the only ones capable of effectuating Plaintiff's requested relief," and "significant prejudice would otherwise result if Plaintiff were not permitted to amend his complaint[.]"). To deny Plaintiff's motion and effectively bar his recovery on what are otherwise timely and viable claims against a competent party simply because the Estate Defendants died before Plaintiff's conviction was vacated would cause severe injustice.

## CONCLUSION

For the above reasons, Plaintiff Herman Williams respectfully requests that the Court grant his motion and enter an Order granting him leave to file his proposed Third Amended Complaint.

Respectfully Submitted,

Date:   April 3, 2025

HERMAN WILLIAMS

/s/      *Paige Smith*
One of the Attorneys for Plaintiff

Antonio M. Romanucci
Sam Harton
Patrick J. Driscoll
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, Illinois 60654
P. (312) 458-1000
aromanucci@rblaw.net
sharton@rblaw.net
pdriscoll@rblaw.net

Steven Hart
Brian Eldridge
John Marrese
Carter Grant
Paige Smith
**HART MCLAUGHLIN & ELDRIDGE, LLC**
One South Dearborn, Suite 1400
Chicago, Illinois 60603
P. (312) 955-0545
shart@hmelegal.com
beldridge@hmelegal.com
jmarrese@hmelegal.com
cgrant@hmelegal.com

psmith@hmelegal.com

*Attorneys for Plaintiff Herman Williams*