*Williams v. Tessman, et al.*
Case No.: 23-CV-5945
File No.: 23-4230

# EXHIBIT 4

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT - PROBATE DIVISION**

In re Estate of:
    Nancy L. Jones,
       deceased

Case No. 2017P001506

## MOTION TO VACATE AND/OR RECONSIDER ORDERS REOPENING ESTATE AND APPOINTING SUCCESSOR INDEPENDENT ADMINISTRATOR

NOW COMES interested party, LAKE COUNTY, ILLINOIS, a municipal corporation (hereinafter "LAKE COUNTY"), by and through their attorneys, Voorn, Jaworski, & Preston, PLLC, pursuant to Section 2-1203 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1203), and, in support of their Motion to Vacate and/or Reconsider Orders Reopening Estate and Appointing Successor Independent Administrator, states as follows:

### Background

1.    NANCY JONES (hereinafter "Decedent") passed away on or about February 1, 2017. On March 8, 2017, her sister, KAREN JONES (hereinafter "Administrator"), filed a Petition for Letters of Administration. On March 28, 2017, an order was entered appointing her as the Independent Administrator and Letters of Office Issued.

2.    On July 31, 2017, the Administrator filed a Certificate of Publication, reflecting that notice was published initially on July 14, 2017, and ran for a period of three (3) weeks. The notice reflected that the statutory claims period ended on January 14, 2018.

3.    On August 9, 2018, the Administrator filed her Final Report with the Court. On September 5, 2018, an order was entered discharging the Administrator and closing the Estate.

4.    On January 22, 2024—more than five (5) years and four (4) months after the Estate was closed—HERMAN WILLIAMS (hereinafter "Petitioner"), filed a Petition to Reopen the Estate (hereinafter "Petition to Reopen"). His Petition to Reopen was brought expressly pursuant

to Section 24-9 of the Illinois Probate Act of 1975. Said Petition sets forth that the Petitioner filed a Section 1983 federal complaint asserting constitutional violations on August 23, 2023, naming the Administrator as a defendant in her capacity as personal representative of the Decedent's Estate. The Petitioner identifies the Decedent as the medical examiner who performed the autopsy of the victim of the murder for which he was allegedly wrongfully convicted; he asserts that the Decedent's conduct as the prosecution's expert witness contributed to his conviction.

5.      The Petitioner identifies the "sole purpose" of his request to reopen the estate and appoint an administrator as being "to enable Herman Williams to name the Estate as a defendant in the Wrongful Conviction Lawsuit." (*See page 2 of Petition to Reopen*). He further repeatedly asserts under oath that he is not seeking any monetary recovery from the Estate and "Petitioner will only seek monetary recovery for such a judgment from her former employer/principal (i.e., Cook County, Illinois, or Lake County, Illinois) or that employer/principal's insurance." (*See page 2 of Petition to Reopen and Exhibits 6 and 7 attached thereto*).

6.      The Petitioner presented his Petition to Reopen to this Court on February 7, 2024. LAKE COUNTY was not sent a copy of the Petition to Reopen.

7.      On April 5, 2024, although the Petition to Reopen had not yet been ruled upon, the Administrator declined to accept reappointment, and the Petitioner was directed to file a petition to appoint a new estate representative and provide 30-day statutory notice to the heirs. Petitioner filed his Petition for Letters of Administration on July 16, 2024, seeking to appoint ANNETTE HULLER (hereinafter "HULLER" or "Successor Administrator") as the independent administrator of the Estate. On information and belief, HULLER, whose address in the Petition for Letters of Administration matches the address of Petitioner's counsel, is an employee or agent of Petitioner's counsel in both this matter and the federal lawsuit in which he seeks to name the

2

Estate as a defendant. Prior to ruling on the Petition for Letters of Administration, LAKE COUNTY was not sent a copy of petition or informed of the nominated administrator or her relationship to Petitioner's counsel.

8.     On August 13, 2024, the Public Administrator filed a declination of office, declining to act as the Estate's representative. On September 3, 2024, this Court entered orders reopening the Estate with "Petitioner's stipulations that no money will be sought from this Estate" and granting letters of independent administration to HULLER.

9.     Petitioner's counsel notified LAKE COUNTY on September 3, 2024, that the Petitioner had reopened the estate and secured HULLER as the administrator.

## Legal Standard

10.     Section 2-1203 of the Code of Civil Procedure provides that "In all cases tried without a jury, any party may, within 30 days after entry of judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." A judgment or order entered in the administration of an estate which finally determines a right or status of a party is considered a final judgment or order. *See Supreme Court Rule 304(b)(1); In re Estate of Burd*, 354 Ill. App. 3d 434 (2nd Dist. 2004).

11.     The purpose of a motion to reconsider under Section 2-1203 is to bring to the Court's attention "new discovered evidence, changes in the law, or errors in the court's previous application of existing law." *Langone v. Schad, Diamond & Shedden, P.C.*, 406 Ill. App. 3d 820 (1st Dist. 2010). By alerting the trial court to errors it has made, the motion provides the court the opportunity for their correction. *In re Marriage of King*, 336 Ill. App. 3d 83 (1st Dist. 2002).

12.     "Other relief" within the meaning of Section 2-1203 is relief similar nature to the other forms of enumerated relief; it is relief that affects the judgment, challenges the judgment, or would change it if granted.  *See County of Cook v. Illinois Fraternal Order of Police Labor Council*, 358 Ill. App. 3d 667 (1st Dist. 2005); *Hayes Machinery Movers, Inc. v. REO Movers & Van Lines*, 338 Ill. App. 3d 443 (1st Dist. 2003).

<u>**Argument**</u>

**Petitioner's Lack of Standing**

13.     Section 24-9 of the Probate Act provides:

> *If a decedent's estate has been closed and the representative discharged, it may be reopened to permit the administration of a newly discovered asset or of an unsettled portion of the estate on the petition of any interested person. If the petition asks the appointment of the former representative or a successor designated by the will, the court may order such notice of the hearing on the petition to be given to any interested persons as it directs or the court may hear the petition without notice. If the petition asks the appointment of a representative other than the one who was acting when the prior administration was completed or a successor designated by the will, notice of the hearing on the petition must be given as the court directs to the former representative and to all persons entitled either to administer or to nominate a person to administer equally with or in preference to the petitioner. No notice need be given to any person who personally appears at the hearing or who files his waiver of notice. On the hearing, the court may vacate the order of discharge or issue letters of office as the case requires. A new bond based on the value of the newly discovered asset or the unsettled portion of the estate and limited to the administration thereof must be furnished as provided by this Act.*

14.     Under the plain language of Section 24-9, only an "interested person" may file a motion to reopen the estate under that section.

15.     Section 1-2.11 of the Probate Act defines an interested person as "one who has or represents a financial interest, property right or fiduciary status at the time of reference which may be affected by the action, power or proceeding involved, including without limitation an heir, legatee, creditor, person entitled to a spouse's or child's award and the representative.

4

16.     Although the Probate Act does not define a creditor, Black's Law Dictionary defines "creditor" as follows:

> *1. One to whom a debt is owed; one who gives credit for money or goods. — Also termed debtee. 2. Roman law. One to whom any obligation is owed, whether contractual or otherwise. Cf. debitor. 3.. A person or entity with a definite claim against another, esp. a claim that is capable of adjustment and liquidation. 4. Bankruptcy. A person or entity having a claim against the debtor predating the order for relief concerning the debtor.*

17.     In this case, Petitioner has repeatedly represented in his Petition to Reopen that he is not seeking any relief, financial compensation, enforcement of a judgment, or property from the Estate.  He identifies no debt or obligation owed by the Decedent to the Petitioner.  He identifies no claim against the Decedent that this Court could adjust or liquidate.  As the Petition to Reopen makes clear, Petitioner instead seeks remuneration only from third parties, including LAKE COUNTY.  As Petitioner seeks no recovery from the Estate, he cannot truly and legitimately be considered a creditor of the Estate.

18.     Even if the Petitioner could be considered to have claim against the Decedent, such interest against the Estate was extinguished and barred under Section 18-12 of the Probate Act, which provides that "[u]nless sooner barred under subsection (a) of this Section, all claims which could have been barred under this Section are, in any event, barred 2 years after decedent's death, whether or not letters of office are issued upon the estate of the decedent."

19.     Illinois courts have long held that the time period to file a claim under Section 18-12(b) "is a grant of jurisdiction, not a general statute of limitations."  *In re Estate of Parker*, 2011 IL App (1st) 102871, ¶57.  Moreover, "[t]he filing of a claim within the statutory period is mandatory, and 'no exception to the filing period may be engrafted by judicial decision.' Once the statutory time period expires, the court has no power or jurisdiction to adjudicate a claim against the estate." *Id*. at ¶58 (citations omitted).

20.    The Decedent passed away on February 1, 2017; therefore, all claims were barred as of February 1, 2019—approximately five (5) years prior to filing the Petition to Reopen the Estate and more than five (5) years prior to filing of Williams' Petition for Letters of Administration—and this Court lost jurisdiction against such claims.

21.    The Petitioner suggests in his Petition to Reopen that Section 18-12(b) is not an absolute bar in this matter because, under Section 18-12(c), Section 18-12 "does not bar actions to establish liability of the decedent to the extent the estate is protected by liability insurance."  The Petitioner cites to *In re Estate of Savio*, 388 Ill. App. 3d 242 (3rd Dist. 2009), and *Hannah v. Gilbert*, 207 Ill. App. 3d 87 (4th Dist. 1990), to support his assertion that this Court should re-open the Estate for the limited purpose of allowing him to have a viable claim to seek recovery from LAKE COUNTY or their insurance policy.[1]  He further referred this Court to the federal trial level decision in *Brown v. City of Chicago* in the Northern District of Illinois as evidence that the U.S. District Court for the Northern District of Illinois "has permitted suits like Petitioner's to proceed for precisely the same reason and in the same fashion as Petitioner requests here. (*See page 8 of Petition to Reopen*).

22.    While the Petitioner notes that the *Savio* matter involved the reopening of a decedent's estate for purposes of a newly discovered wrongful death claim four (4) years after the decedent's death, he fails to mention that it was reopened because it was a newly discovered claim <u>belonging to the decedent</u>.  In that matter, autopsies were conducted after the decedent's estate was closed, which established that her death was probably a homicide rather than an accident.  *Savio*, 388 Ill. App. 3d 242.  The decedent's father and siblings filed a petition to reopen the estate, to remove the original executor (her surviving spouse who was suspected of murdering her), and to

---

[1] Petitioner makes the same claims against Cook County.

6

appoint a new executor. The appellate court found that a wrongful death claim can only be brought by personal representative of an estate, so even though it is not an asset for purposes of creditor claims, it is for purposes of whether the estate may be reopened. *Id*. at 248-249. As a newly discovered <u>asset</u> of the estate, the wrongful death claim fell squarely under the language of Section 24-9 of the Probate Act as a basis to reopen that estate. In the present case, the Petitioner requested to reopen the Estate based on his purported claim <u>against the Estate</u> rather than to administer a new asset belonging to the Estate.

23. The Petitioner represents that the *Hannah* decision provides that the prior administration of the estate is no bar to reopening it to assert an action for damages otherwise properly brought within the ordinary statute of limitations applicable to cause of action to be asserted. In *Hannah*, 207 Ill. App. 3d 87, an individual plaintiff filed a breach of a non-compete clause against a defendant; the original jury verdict was overturned because the proper plaintiff was a corporation. After the complaint was amended on remand and litigation continued, the defendant passed away; because his assets were in joint tenancy, there was no estate opened or anticipated to be opened by his heirs. On the plaintiff's motion, the defendant's widow was appointed special administrator, and the case again proceeded to a jury trial, resulting in a judgment against the defendant. The special administrator was granted a judgment n.o.v. based on a prior version of Section 18-12(b), which barred all claims against an estate unless letters of office were issued within three years of the decedent's death. In *Hannah*, the question was not whether the decedent's estate could be reopened to pursue a claim that accrued post-death—in fact, it did not involve reopening an estate at all because one was never opened. Instead, *Hannah* involved a case that was filed against the decedent while he was still alive. That court's analysis of Section 18-12

was limited to determining whether that section rendered the judgment entered in the case initiated prior to the defendant's death a nullity.

24. The *Brown* ruling relied upon by Petitioner is essentially a trial court ruling from another jurisdiction and has no precedential value in Illinois court. *See King's Health Spa, Inc. v. Village of Downers Grove*, 2014 IL App (2d) 130825, ¶63 (noting that unpublished federal decisions "are not binding or precedential in Illinois courts"). Moreover, in that matter, the underlying case involved a decedent who never had an estate opened, so the plaintiff sought the appointment of a special representative under Section 13-209 of the Illinois Code of Civil Procedure. Section 13-209 provides that, if a potential defendant passes away before the expiration of a statute of limitations and the cause of action survives "and is not otherwise barred," an action can be commenced against the personal representative under certain conditions. The *Brown* judge ruled that Section 18-12(b) did not otherwise bar the claim because of the exception in Section 18-12(c) relating to "actions to establish liability of decedent to the extent the estate is protected by liability insurance." However, in reaching that conclusion, the judge relied on other federal decisions with no precedential value in Illinois. Neither the *Brown* ruling nor the Petitioner have identified a single Illinois precedential authority that has ruled that indemnification by a government entity is the functional equivalent of liability insurance or that interprets the language of Section 18-12(c) to encompass the Illinois Local Governmental and Governmental Employees Tort Immunity Act (hereinafter "LGGETIA").

25. The Petitioner's argument that Section 18-12(c) applied in this case to allow his "claim" to proceed and to reopen this Estate is that Section 9-102 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/9-102) qualifies as "liability insurance." As stated by the Petitioner, Section 9-102 provides that "A local public

entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorneys' fees and costs) for which it or an employee acting within the scope of his employment is liable in the manner provided in this Article."

26.     Petitioner's argument fails for two reasons. First, it presumes that the Estate will be indemnified by a government entity, such as LAKE COUNTY, a matter which will be contested should Ms. Jones's estate be added to the federal lawsuit.   Second, even if the Estate was indemnified at some point in the future, that does not qualify as "liability insurance" under Section 9-102.

27.     The Illinois Supreme Court has stated that, "In construing the meaning of a statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. The language of the statute provides the best indication of the legislature's intent. We will not depart from the plain language of the statute by reading into it exceptions, limitations or conditions conflicting with the express legislative intent. Moreover, where the statutory language is clear and unambiguous, it will be given effect without resorting to other aids of construction." *In re Consolidation of Objections to Tax Levies of School Dist. No. 205*, 193 Ill.2d 490, 496 (2000)(citations omitted).  Because Section 9-107 of the LGGETIA empowers a local public entity to levy taxes to pay for damages for which it is liable under Section 9-102, the Supreme Court also applies a strict construction of its terms because it should be considered a taxing statute.  *Id*. at 497.  The Supreme Court noted that that "the purpose behind the Tort Immunity Act is to subject local governmental units to liability in tort on the same basis as private tortfeasors with the exception for those immunities provided by the Act." *Id*. at 502.  Furthermore, in reaching its decision, the Supreme Court distinguished its interpretation of the LGGETIA from its decision in *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill.2d 90 (1992), noting that case

9

involved the interpretation of insurance policies between contracting parties and made in the context of broad insurance policies and with respect to the policies' intended scope of coverage. *Id*. at 498-499. In discussing the purpose of the LGGETIA, the Supreme Court made no indication that it equated government indemnification to liability insurance and expressly distinguished the LGGETIA from a decision interpreting insurance policies.

28. Section 18-2(c) of the Illinois Probate Act expressly uses the term "liability insurance." When construing a statute, the "primary objective is to ascertain and give effect to the intent of the legislature" and "[a]ll other rules of statutory construction are subordinate." *In re Estate of Parker*, 2011 IL App (1st) 102871, ¶54. "The statutory language must be given its plain, ordinary and popularly understood meaning. Clear and unambiguous statutory language must be given effect as written without resort to further aids of statutory construction." *Id*. According to Black's Law Dictionary, "insurance" is defined as "1. A contract by which one party (the insurer) undertakes to indemnify another party (the insured) against risk of loss, damage, or liability arising from the occurrence of some specified contingency. • An insured party usu. pays a premium to the insurer in exchange for the insurer's assumption of the insured's risk. Although indemnification provisions are most common in insurance policies, parties to any type of contract may agree on indemnification arrangements. Insurance establishes a risk-distribution arrangement, supported by risk-pooling, risk-allocation, risk-transfer, and risk-reduction. See risk-pooling; risk allocation; risk transfer; risk reduction. Cf. coverage (1). 2. The amount that an insurer is obligated to pay for a claim properly covered by the contract." *Black's Law Dictionary* (12th ed. 2024). It further defines "liability insurance" as "[i]nsurance that protects the insured against loss from the insured's alleged liability to a third party."

10

29.     Based on the plain meaning of insurance, it necessarily involves a contractual relationship.  The obligations arising from the LGGETIA are statutory and not contractually based; the LGGETIA does not identify itself as an insurance policy.  Nothing in the plain language of Section 18-12(c) establishes that "liability insurance" extends to non-contractual statutory obligations of a third party.  Therefore, the exception contained in Section 18-12(c) does not apply in this case, and Petitioner's claim against the Decedent's Estate is barred under Section 18-12(b).

30.     Petitioner is not an interested person in the Decedent's Estate.  He is not actually asserting a claim against the Estate to qualify as a creditor by his own admissions.  Furthermore, any unfiled claims were barred more than five (5) years ago under Section 18-12(b) of the Illinois Probate Act, depriving the Petitioner of any claim against the Estate.  Therefore, he lacked standing to file his Petition to Reopen and Petition for Letters of Administration, and this Court should not have granted them in its orders of September 3, 2024.

**Lack of Authority to Reopen**

31.     As discussed above, statutory language must be given its plain meaning, and clear and unambiguous statutory language must be given effect as written.  Section 24-9 of the Illinois Probate Act provides, in relevant part, that "If a decedent's estate has been closed and the representative discharged, it may be reopened *to permit the administration of a newly discovered asset or of an unsettled portion of the estate* on the petition of any interested person."  (Emphasis added).  "Where a statute specifies the grounds on which a final settlement will be opened or set aside, such grounds must be shown to be present in order to warrant action by the court."  *In re Matter of Moskal's Estate*, 50 Ill. App. 3d 291, 292 (1st Dist. 1977).  Section 24-9 only allows the trial court to reopen an estate "when one of the two circumstances enumerated in that section is

present." *In re Estate of Knoes*, 114 Ill. App. 3d 257, 260 (1st Dist. 1983); *In re Estate of Billotti*, 56 Ill. App. 3d 552 (3rd Dist. 1978), *affirmed by Commercial National Bank v. Bruno*, 75 Ill.2d 343 (1979). A trial court reopening an estate where neither of the statutory requirements was met is not proper and "to hold otherwise would make such statutory provision meaningless." *Billotti*, 56 Ill. App. 3d 552, 554-555; *Bruno*, 75 Ill.2d 343, 348. Such an order would be void. *Billotti*, 56 Ill. App. 3d 552, 556.

32. In the *Billotti* and *Bruno* case, the estate representative was informed of the existence of foreign heirs, but did nothing to try to locate them. Approximately a year after the estate was closed, the trial court reopened the estate, citing Section 24-9, while it denied the foreign heirs' motion to vacate the order under Section 72 of the Civil Act (now Section 2-1401 of the Code of Civil Procedure). The Supreme Court upheld the Third Appellate District's ruling that the order was void because neither a newly discovered asset nor unsettled portion of the estate were brought to the court's attention. *See also In re the Estate of Carlen*, 2015 IL App (5th) 130599 (finding as a matter of law that an unsatisfied money judgment is not the equivalent of an "unsettled portion of the estate" and finding it was an error for the trial court to reopen the estate to allow the creditor's petition for revival).

33. In the present case, the Petitioner expressly identifies **his** federal lawsuit as the unsettled portion of the Estate. However, the claim was never part of the Estate, so it cannot be a portion that remained unsettled, particularly if an actual outstanding judgment does not qualify as the equivalent of an unsettled portion under Section 24-9.

34. The Petitioner and HULLER by their own admissions have represented to this Court that the Estate holds no assets, has no value, and is not expected to bring any assets into the Estate. *See Petition for Letters of Office and Oath and Bond of Representative*. Because the

Petitioner identifies no actual newly discovered asset or unsettled portion of the Estate, he failed to meet the statutory requirements to reopen an Estate, and this Court erred in granting his Petition to Reopen.

**Conflict of Interest**

35.     In the event this Court decides not to vacate the orders of September 3, 2024, outright, it would be appropriate to reconsider the appointment of HULLER based on the complete circumstances.

36.     An Estate's representative has a fiduciary relationship to the estate and is held to the highest standard of fair dealing and diligence.  *In re Glenos' Estate*, 50 Ill. App. 2d 89 (1st Dist. 1964); *In re Burger's Estate*, 16 Ill. App. 2d 510 (1st Dist. 1958).

37.     The Supreme Court has held that no one has an absolute right to administer an estate and "[u]nsuitableness to administer may well consist of an adverse interest of some kind, or hostility to those immediately interested in the estate, whether as creditors or distributes, or even of an interest adverse to the estate itself."  *In re Abell's Estate*, 395 Ill. 337 (1946).

38.     On information and belief, HULLER has a conflict of interest in that she is the employee or agent of the Petitioner's counsel in his federal litigation.  She cannot both defend the Estate in that litigation and work for those prosecuting the claim.

WHEREFORE, interested party, LAKE COUNTY, ILLINOIS, prays this Court:

(A)     For entry of an order finding that the Petitioner lacked standing to file his Petition to Reopen and/or failed to meet the statutory requirements of Section 24-9 of the Illinois Probate Act and vacating the orders entered on September 3, 2024;

(B)    In the alternative, for entry of an order revoking the letters of office issued to Annette Huller and modifying the order of September 3, 2024, to appoint an estate representative without a conflict of interest; and

(C)    For such further relief as this Court deems appropriate.

Respectfully submitted,

VOORN, JAWORSKI, & PRESTON PLLC.,
BY HEATHER E. VOORN

FIRM ID: 99993
HEATHER VOORN
VOORN, JAWORSKI & PRESTON PLLC
1938 E. LINCOLN HIGHWAY, SUITE 219
NEW LENOX, ILLINOIS 60451
815-215-8777
HVOORN@VJPLAWYERS.COM

14