**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HERMAN WILLIAMS, | Case No. 1:23-cv-05945 |
|         Plaintiff, | Hon. Sunil R. Harjani |
|     v. | Hon. Daniel P. McLaughlin |
| LUCIAN TESSMANN, *et al.*, | |
|         Defendants. | |

## PLAINTIFF'S MOTION TO QUASH SECOND SUBPOENA TO ILLINOIS DEPARTMENT OF CORRECTIONS FOR JAIL PHONE CALLS

Plaintiff Herman Williams, by and through his counsel, Romanucci & Blandin, LLC and Hart McLaughlin & Eldridge, LLC, pursuant to Federal Rule of Civil Procedure 45(d), moves to quash the second subpoena to the Illinois Department of Corrections – Intel Center ("IDOC Subpoena"), issued by Defendants Lake County, Charles Fagan, Dennis Pensala, Kevin Berrill as Special Representative for Defendant Robert Randall (Deceased), Leonard Brezinski, Daniel Colin, Village of Vernon Hills, Richard Davies, and Sheriff John Idleburg ("Defendants").

### OVERVIEW

This Court definitively held that "[s]ubpoenas that indiscriminately seek 28 years' worth of call recordings must be quashed as overbroad, invasive of Plaintiff's privacy interests, and not narrowly tailored to seeking relevant evidence." (Dkt. 181, Oct. 29, 2024, Order, at *2.) The Court affirmed its holding in denying Defendants' reconsideration motion, further clarifying that "an indiscriminate request for call recordings for a four-year period is not narrowly tailored," instructing Defendants that "any subsequent subpoenas must be narrowly tailored to seeking relevant information." (Dkt. 192, Nov. 20, 2024, Order, at *1.) In spite of this Court's Orders, as well as orders from countless other

courts in this District cautioning Defendants against issuing similarly overbroad subpoenas, Defendants continue to ignore precedent and press ahead with their boundless subpoenas.

Through their second IDOC Subpoena, Defendants have again sought thousands of recordings of Plaintiff's jail telephone and video calls that he made over the course of his almost thirty years in prison without any genuine effort to narrowly-tailor their requests. Defendants maintain that they have sufficiently limited their requests to "all calls/video visits" with Plaintiff's father, sister, daughter, and cousin occurring at any point during Plaintiff's incarceration and, separately, four requests for "all calls/video visits" at times over a 20-month period that "it is likely [Plaintiff] was discussing information relevant to this case." Despite purporting to narrow their requests, however, Defendants remain unable to articulate any substantive basis to conclude that the production of decades' worth of Plaintiff's communications with those closest to him will uncover any relevant information. Even with the benefit of an additional five months of fact discovery following the Court's denial of Defendants' motion for reconsideration of the Court's order quashing Defendant's first IDOC subpoena for Plaintiff's jail calls, Defendants remain unable to identify any document, communication, or testimony that suggests that Plaintiff's recorded telephone conversations would reveal relevant information. Instead, they point to the same written jail messages they referenced in their September 16, 2024, response to Plaintiff's motion to quash Defendants' first IDOC subpoena, failing to connect them in any respect to their new requests.[1]

In light of the undue burden posed by the IDOC Subpoena, and in an attempt to avoid further litigation over Defendants' jail call requests, Plaintiff again objected and conferred with Defendants over the course of the past four months, offering Defendants additional information regarding his recollection of his calls. Following five weeks of silence, Defendants advised that Plaintiff's effort to

---

[1] The Court will recall that Defendants are already in possession of all of Plaintiff's written/electronic communications from his time in prison.

characterize the frequency and detail with which he discussed his conviction in an effort to narrow the broad scope of the IDOC Subpoena was "baseless," "inappropriate," and "without merit." Defendants communicated that they are unwilling to further narrow their requests, and the parties have now reached an impasse.

Because Defendants do not and cannot proffer a basis to support their exceedingly broad requests for thousands of recordings, all unlikely to yield relevant or admissible information, Plaintiff's privacy interests outweigh any potential relevance in the calls' content, subjecting him to undue burden. Accordingly, Defendants' second IDOC Subpoena, like their first, is improper, and, for the reasons set forth more fully below, Mr. Williams respectfully requests that the Court enter an Order quashing it.

## RULE 37.2 ATTESTATION

As discussed more fully in the Background section below, counsel for Plaintiff (John Marrese) and Defendants (Claudia Fantauzzo) conferred between December 2024 and April 2025 by telephone (in conjunction with email correspondence) and made good faith attempts to resolve their differences but were unable to reach accord on this matter.

## BACKGROUND

Plaintiff's lawsuit seeks redress for the nearly 29 years he spent incarcerated as a result of Defendants' unconstitutional misconduct. (Dkt. 135.)

On February 26, 2024, Defendants served notice that they planned to issue subpoenas requesting, for the period of February 1994 through September 2022, "[a]ny and all recorded telephone calls, call logs, tablet data, incoming and outgoing inmate email messages, and recorded video visitation videos relating to or involving former inmate HERMAN WILLIAMS[,]" to which Plaintiff objected. (Dkt. 163, Pl. Mtn. to Quash Subpoenas for Jail Phone Calls.) On October 29, 2024, this Court granted Plaintiff's motion to quash as to Defendants' "indiscriminate[]" request for "28

3

years' worth of call recordings," opining that they "must be quashed as overbroad, invasive of Plaintiff's privacy interests, and not narrowly tailored to seeking relevant evidence." (Dkt. 181, Order, at *2 (citing *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, 2020 WL 7059444, at *5 (N.D. Ill. Dec. 2, 2020); *Bishop v. White*, No. 16 C 6040, 2020 WL 6149567, at *6 (N.D. Ill. Oct. 20, 2020)).) Defendants moved for reconsideration of the Court's order, (Dkt. 184), which this Court denied on November 20, 2024. (Dkt. 192, Order.) In denying Defendants' bid for reconsideration, the Court cautioned Defendants against "[s]imply asking IDOC to 're-produce the exact calls it has already provided[,]'" warning that "an indiscriminate request for call recordings for a four-year period is not narrowly tailored." (*Id.*)

On December 20, 2024, Defendants sent notice that they would be issuing a new subpoena to the IDOC seeking Plaintiff's recorded jail calls. (*See* Ex. 1, IDOC Subpoena Correspondence; Ex. 2, IDOC Subpoena.) Defendants' second IDOC subpoena effectively ignores the Court's prior Orders and seeks, by and large, the same overly broad set of calls between Plaintiff and his family members over the course of almost thirty years, as well as any and all calls that Plaintiff had with anyone over the course of various months-long periods leading up to his release. Plaintiff's counsel objected on the same date, on grounds that the amended subpoena still seeks a considerable number of calls spanning hundreds of hours. (Ex. 1, IDOC Subpoena Correspondence.)

Despite Plaintiff's counsel providing their availability for a meet and confer conference promptly, Defendants' counsel did not schedule a time to confer with Plaintiff's counsel regarding the breadth of their second IDOC subpoena until the morning of February 5, 2025. The parties scheduled a teleconference for that afternoon.

On February 5, 2025, the parties held a teleconference, wherein the parties discussed the breadth of Defendants' requests. (*Id.*) Plaintiff's counsel sought to ascertain Defendants' basis for asserting that the new subpoena will lead to the production of relevant information and offered to

confer with Defendants to tailor the subpoena. Defendants thereafter sought information from Plaintiff specifically identifying each call he had over the course of almost thirty years in which he spoke about the case with witnesses that have been disclosed in this case. On March 18, 2025, Plaintiff's counsel summarized Plaintiff's recollection of his jail calls, including the frequency and level of detail with which he discussed his 1994 conviction and his post-conviction efforts to vacate it with all phone numbers that he communicated with while he was incarcerated. (*Id.*) In light of the information provided, Plaintiff asked Defendants to narrow their subpoena. (*Id.*)

On April 23, 2025, after more than five weeks of silence, Defendants responded that Plaintiff's characterizations of his calls were "baseless[.]" Defendants further claimed that using Plaintiff's recollection of his own calls "to support [Plaintiff's] objection to the subpoena is both inappropriate and without merit" — despite the fact that Defendants had sought such information from Plaintiff. (*Id.*) Defendants reiterated their position that Plaintiff's general discussions and updates regarding his conviction with his family and friends entitle them to the communications sought by subpoena. (*Id.*) Defendants declined to narrow the scope of their requests, and on the same date, Defendants confirmed that the parties reached an impasse. (*Id.*) Plaintiff informed Defendants that he would file a motion to quash the subpoena.

## LEGAL STANDARD

Under Rule 45(a), a party may issue a subpoena to command production of documents or other tangible material in a nonparty's possession or control. Fed. R. Civ. P. 45(a). "The scope and limits of production under a subpoena are the same as the scope for discovery generally under Rule 26," which allows for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1); *Pursley v. City of Rockford*, No. 18 CV 50040, 2020 WL 7260797, at *2 (N.D. Ill. Dec. 10, 2020).

Rule 45(d) mandates that the Court quash or modify a subpoena that "subjects a person to undue burden" or "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3). In assessing whether a subpoena imposes an undue burden, courts consider whether "the burden of compliance with it would exceed the benefit of production of the material sought by it." *In re Watts Coordinated Pretrial Proceedings*, No. 19 C 1717, 2024 WL 3470596, at *4 (N.D. Ill. July 19, 2024). Where the undue burden objection is raised by a party to the action rather than the subpoena recipient, the Court must balance the privacy interests of the person seeking to quash the subpoena against the relevance and benefit of the information sought. *Rodriguez v. City of Chi.*, No. 18-cv-7951, 2021 WL 2206164, at *1 (N.D. Ill. June 1, 2021); *see also Pursley*, 2020 WL 7260797, at *2 ("a court must always consider the relevance of the subpoenaed material when determining if a subpoena should be quashed").

The party seeking to quash a subpoena carries the burden of establishing its impropriety. *Russell v. City of Chi.*, No. 20-cv-1163, 2022 WL 294765, at *1 (N.D. Ill. Feb. 1, 2022). Magistrate judges "enjoy extremely broad discretion in controlling discovery," including resolving disputes relating to nonparty discovery. *Id.* (citing *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013)).

## ARGUMENT

### I. As this Court previously ruled, Plaintiff's privacy interests confer standing to challenge Defendant's IDOC Subpoena for his jail calls.

Before the Court may exercise its authority to modify or quash the Subpoenas under Rule 45(d), "a party must have standing to move to quash the subpoena in question." *Bishop*, 2020 WL 6149567, at *3. As this Court previously held, Plaintiff has standing to move to quash Defendants' subpoena to IDOC for recordings of the telephone calls he made while he was incarcerated. (Doc. 181, at *1 (citing *In re Watts Coordinated Pretrial Proc.*, 2024 WL 3470596, at *3).)

II. **Defendants are unable to justify the exceptional breadth of discovery sought through their second subpoena to IDOC for Plaintiff's recorded jail calls.**

Defendants' new IDOC Subpoena effectively seeks two categories of recorded calls: (1) "[a]ll calls/video visits" that Plaintiff had with 12 phone numbers belonging to his father, daughter, sister, or cousin during nearly 30 years , **and** (2) "all calls/video visits" that Plaintiff had with any individual during certain timeframes across a 20-month period (amounting to a total of 13 months) leading up to Plaintiff's release between February 2021 and September 2022. (Ex. 2, IDOC Subpoena.) Like its first subpoena to IDOC for Plaintiff's jail calls, Defendants' only justification for either category of requests is Plaintiff's electronic messages, which Defendants marshal as proof that Plaintiff "discussed various aspects of the case" during periods of his incarceration. However, given their second IDOC Subpoena similarly indiscriminately seeks Plaintiff's jail calls without offering "more than mere speculation that the recordings could house relevant evidence[,]" Defendants' specious efforts to "narrow" their requests for Plaintiff's jail calls are insufficient to salvage their second IDOC Subpoena. *DeLeon-Reyes*, 2020 WL 7059444, at *5.

As the Court noted in ruling on Plaintiff's motion to quash Defendants' first IDOC subpoena, once the Court is satisfied that Plaintiff has established his standing to challenge the IDOC Subpoena, the Court's analysis shifts to whether the subpoena imposes an undue burden. (Dkt. 181 (citing *In re Watts*, 2024 WL 3470596, at *4).) Where the subpoena is directed to a third party but implicates Plaintiff's privacy interest, "the Court must consider the 'privacy burden' on [P]laintiff[] and balance [his] privacy interests in the subpoenaed materials against the relevance and benefit of those materials." (*Id.*) In cases involving jail call recordings, the Court must determine "whether the IDOC calls are relevant," and if so, "whether the burden of discovery of the calls (that is, the privacy burden from the intrusion on Plaintiffs' privacy, plus the burden entailed in reviewing all the calls) outweighs the likely benefit of the calls considering their importance (or lack thereof) in resolving issues in the litigation." (*Id.*) "Accordingly, even where the defendant can show that jail call recordings probably

contain relevant information, any related subpoena must be 'narrowly tailored to seek only that subset of recordings.'" (*Id.* (quoting *In re Watts*, 2024 WL 3470596, at *6).) Put another way, courts in this District require a defendant seeking to obtain recordings of prisoners' phone conversations to establish that "evidence already discovered indicat[es] that the recordings would probably document something relevant." *DeLeon-Reyes*, 2020 WL 7059444, at *5; *Simon v. N.w. Univ.*, No. 1:15-cv-1433, 2017 WL 66818, at *4 (N.D. Ill. Jan. 6, 2017) (granting motion to quash subpoena for jail calls, highlighting that the defendant "has not provided . . . evidence that the calls are relevant to this litigation.").

For example, in *DeLeon-Reyes*, the court granted the movant's motion to quash the defendants' subpoena for all jail calls to the movant "from January 2019 to the present," with the exception of attorney-client communications. *DeLeon-Reyes*, 2020 WL 7059444, at *1. The *De-Leon-Reyes* defendants justified their subpoena for the movant's jail calls by pointing to witness deposition testimony suggesting that the witness and the movant had a close friendship and were housed together for a period of time. *Id.* From these facts, the *DeLeon-Reyes* defendants submitted that the witness likely shared relevant information with the movant about the case. *Id.* at *5. Rejecting the defendants' "confusing conspiracy theory," the court pointed to the fact that "there is no evidence that [movant] talked to others on the phone about [the witness][.]" *Id.* Until the defendants could show evidence indicating the movant talked to others on the phone about the witness in a way relevant to this case, the court held that they "are 'throwing darts in the dark,' and have not provided the Court with a 'non-conjectured factual basis that the calls in fact contain relevant information.'" *Id.* (quoting *Simon*, 2017 WL 66818, at *4); *see also Bishop*, 2020 WL 6149567, at *5 (granting motion to quash subpoena seeking all recordings of Plaintiff's phone conversations for a four-year period, citing defendants' failure to adduce direct evidence the plaintiff and the relevant witness ever spoke over the phone, finding,

"Defendants' subpoena falls more within the broad fishing expeditions described and rejected in *Pursley* and *Simon* than the documented, proportional effort allowed in *Coleman*").

Meanwhile, in *Coleman v. City of Peoria*, the court declined to quash the defendants' subpoenas seeking phone call recordings where the defendants' subpoena individually listed the names of each witness whose calls they believed would contain pertinent information, and the defendants pointed to the deposition testimony that formed the basis of their belief. No. 15-cv-1100, 2016 WL 3974005, at *10 (C.D. Ill. July 22, 2016). As aptly stated by the *Simon* court, the *Coleman* defendants left the court "with little question as to the potential relevance of subpoenaed recordings." *Simon*, 2017 WL 66818, at *4.

Defendants' IDOC Subpoena, like its first subpoena to IDOC, is "more akin to the rejected subpoenas in *Simon*[,] . . . *Bishop*," and *DeLeon-Reyes* than the targeted subpoena in *Coleman*. Like in *Simon*, *Bishop*, and *DeLeon-Reyes*, Defendants' IDOC Subpoena broadly seeks discovery not only of thousands of calls between Plaintiff and his closest family members throughout Plaintiff's nearly 30-year incarceration, but also of all of Plaintiff's calls across time periods totaling 13 months, with no limitation as to caller. *Simon*, 2017 WL 66818, at *4; *Bishop*, 2020 WL 6149567, at *5, *DeLeon-Reyes*, 2020 WL 7059444, at *5. And like in *Simon*, *Bishop*, and *DeLeon-Reyes*, Defendants fail to support their extremely broad requests with a non-speculative basis to conclude that the requested calls "in fact contain relevant information." *Id.* Defendants' second IDOC Subpoena, like its first, is plainly overbroad and improper.

Still, Defendants maintain that Plaintiff's electronic messages "support [their] contention that the calls [they] are seeking are relevant and discoverable." (Ex. 1, IDOC Subpoena Correspondence.) Rather than identify the discrete messages that justify their requests, Defendants have directed Plaintiff to pages 9 through 10 of their response to Plaintiff's motion to quash Defendants' first IDOC subpoena, which Defendants claim, "sets forth in detail the relevant topics [Plaintiff] discussed in each

message." (*Id.*) But as Plaintiff has already explained in reply in support of his motion to quash Defendants' first IDOC subpoena, "not a single message cited by Defendants supports their conclusion that Plaintiff's Jail Calls documented relevant conversations." (Dkt. 176, at 6.) Plaintiff thoroughly debunked Defendants' reliance on Plaintiff's electronic messages, detailing Defendants' failure to cite to a single message that so much as hints "that he had any substantive discussion related to his case over the phone." (*Id.*) Further, despite arguing that Plaintiff composed these messages during the same timeframes for which Defendants seek production of all Plaintiff's calls, only 10 of the 51 messages that Defendants cited as evidence that Plaintiff made calls about retesting physical evidence, his petition to vacate his conviction, his criminal defense attorney, the Illinois Innocence Project, the possibility of re-trial, or inconsistencies in his case were sent between February 2021 and May 2021, September 2021 and January 2022, April 2022 and May 2022, and August 2022 through September 2022. (Dkt. 171, Defs. Resp. to Pl. Mtn. to Quash, at 10-11; Dkt. 171-2, Inmate Messages Report.) At most, these messages merely confirm what Plaintiff's counsel communicated to Defendants on March 18, 2025: Plaintiff's phone conversations will likely contain only tangential, passing references to his case and are unlikely to contain any substantive discussion regarding the facts, evidence, or legal theories at issue in this litigation or his 1994 criminal conviction. (*See, e.g.*, Ex. 3, SDT-IDOC-Intel 237 ("On the legal news, im supposed to have a video conference with my dream team this wednesday.").)

To the extent that Defendants rely upon Plaintiff's Rule 26(a)(1) witness disclosures to support their exceedingly broad request for nearly 30 years of calls with Plaintiff's father, daughter, sister, and cousin, as Plaintiff also explained in support of his motion to quash Defendants' first IDOC subpoena, "Plaintiff's admission that he spoke with his father, daughter, sister, and cousin about the circumstances of his criminal conviction during the almost thirty years that he was incarcerated is insufficient, on its own, to indicate that Plaintiff's recorded conversations 'probably document[ed]

10

something relevant.'" (Dkt. 176, at 4 (citing *DeLeon-Reyes*, 2020 WL 7059444, at *5).) This district has rejected similar attempts by defendants to manufacture generalized relevance on the basis of witness disclosures where no other evidence suggests relevant phone conversations were held. *DeLeon-Reyes*, 2020 WL 7059444, at *5-6; *Ezell v. City of Chi.*, No. 1:18-cv-01049, 2020 WL 9259071, at *1 (N.D. Ill. Sept. 2, 2020); *Pursley v. City of Rockford*, No. 18-cv-50040, 2020 WL 1433827, at *4 (N.D. Ill. Mar. 24, 2020); *Simon*, 2017 WL 66818, at *4. The Court should do the same here.

Like the overbroad subpoenas at issue in *Simon*, *Bishop*, and *DeLeon-Reyes*, Defendants' contention that they are entitled to discovery of every call Plaintiff made to his family members during the almost thirty-year period he was in custody and of every call Plaintiff made across periods totaling 13 months "is supported by zero evidence developed to date in this litigation," *Simon*, 2017 WL 66818, at *4, and "unreasonably tramples on Plaintiff's even minimal privacy interests." *Bishop*, 2020 WL 6149567, at *4. Defendants have "merely guessed that [Plaintiff] would have used [his] phone[] for potentially relevant reasons and issued subpoenas not sufficiently limited in time or scope." *Bishop*, 2020 WL 6149567, at *5. But "Defendants need to present a more convincing argument that relevant evidence will be found in Plaintiff's jailhouse calls before they will be allowed to 'go fishing' in that particular pond." *Id.* at *7. Given Defendants' second IDOC Subpoena seeks a similarly hefty production of Plaintiff's calls, and Defendants have not identified any new or additional evidence adduced in discovery indicating that Plaintiff held relevant conversations over the phone, the Court should quash Defendants' second IDOC Subpoena.

Moreover, as this Court previously noted, in weighing the burden of the discovery of calls recorded during incarceration against the benefit of their production, courts consider the burden on counsel to download, organize, listen to, and analyze the relevance of each recorded call. *See In re Watts*, 2024 WL 3470596, at *5-6; *McClendon v. City of Chi.*, 345 F.R.D. 322, 327 (N.D. Ill. 2024); *Bishop*, 2020 WL 6149567, at *6 (searching 8,000 phone calls, without any limitations, is not proportional to

the needs of the case). The *Watts* court, granting in part and denying in part a motion to quash a subpoena for telephone recordings created while the plaintiffs were in custody, found that, while the defendants had set forth enough evidence to show that some calls may contain somewhat relevant information, to allow them to listen to all calls with relevant individuals would not only "intrude on [plaintiff's] minimal privacy interest, but would require his attorneys to divert time and resources to the task of listening to the recordings – not to mention transcribing, abstracting, or otherwise organizing the information from any calls containing arguably relevant content." *Id.* at *8. Like *In re Watts*, "[i]t seems quite possible that many of the . . . calls will contain no relevant content, and the probative value of even relevant calls is uncertain," such that the burden of allowing the broad discovery sought through the IDOC Subpoena outweighs the likely benefit and is thus not proportional to the needs of the case. *Id.* at *8, *13.

Defendants' second IDOC Subpoena, if enforced as written, would result in the production of thousands of hours of conversations that took place across thousands of phone calls over the course of decades, with, at most, a "slim showing" of relevancy. *See DeLeon-Reyes*, 2020 WL 7059444, at *5. Like in *Watts*, it is all but certain that the vast majority of those calls (as well as calls outside of the requested periods) are not relevant to resolving the claims at issue in this litigation, and, to the extent any may be, "the probable content of some unknown number of them" are "of marginal, questionable, or uncertain benefit." 2024 WL 3470596, at *7; *see also McClendon*, 345 F.R.D. at 327 (subpoena for 50 specific call recordings fails to meet proportionality standard where no particularized basis to conclude relevant discussions occurred during those calls, as burden to review, "while not overwhelming, is more than enough to outweigh the theoretical relevance of the calls"). Unlike *Watts*, though, Defendants have yet to make any legitimate threshold showing of relevance, much less justify the benefit of the production of such voluminous records in light of the significant burden their review would impose, making their request far more nebulous than those at issue in *Watts*. The

12

disproportionate burden that would result from enforcement of Defendants' second IDOC Subpoena is but another factor supporting its impropriety.

Defendants' second IDOC Subpoena does little to mitigate the burden imposed by its extensive requests. Accordingly, as with Defendants' first IDOC subpoena, Plaintiff's privacy interest in decades' worth of his recorded phone calls plainly outweighs any tenuous relevancy Defendants can muster to support their vastly overbroad IDOC Subpoena. Defendants' second IDOC Subpoena for Plaintiff's jail call recordings is unenforceable and should be quashed.

## CONCLUSION

For the foregoing reasons, Plaintiff Herman Williams respectfully requests that the Court grant his motion and enter an Order quashing Defendants' second IDOC Subpoena.


Date:   May 6, 2025                                      HERMAN WILLIAMS

                                                         /s/      *Paige Smith*
                                                         One of the Attorneys for Plaintiff

Antonio M. Romanucci
Sam Harton
Patrick J. Driscoll
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, Illinois 60654
P. (312) 458-1000
aromanucci@rblaw.net
sharton@rblaw.net
pdriscoll@rblaw.net

Steven Hart
Brian Eldridge
John Marrese
Carter Grant
Paige Smith
**HART MCLAUGHLIN & ELDRIDGE, LLC**
One South Dearborn, Suite 1400
Chicago, Illinois 60603
P. (312) 955-0545
shart@hmelegal.com
beldridge@hmelegal.com

jmarrese@hmelegal.com
cgrant@hmelegal.com
psmith@hmelgal.com

*Attorneys for Plaintiff Herman Williams*