**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HERMAN WILLIAMS, | |
| Plaintiff, | Case No. 23 cv 5945 |
| v. | Honorable Sunil R. Harjani |
| LUCIAN TESSMANN, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Federal court litigation often has no shortage of surprises. Here, Plaintiff moves this Court to reconsider its November 21, 2024, Order denying its motion to amend his complaint to identify new administrators of two Defendant estates. While at first glance Plaintiff's motion appears to involve a simple case of a plaintiff moving to amend his complaint after a court deadline has passed, there is more to the story. As part of his broader claims in this matter, Plaintiff seeks to sue two deceased individuals, Gregory Garofalo and Nancy Jones, for conduct related to his wrongful conviction more than 30 years ago for the murder of his ex-wife. If permitted, the amendment would substitute for the two deceased Defendants, the office manager of Plaintiff's counsel's law firm as their estate administrators. That office manager would be required to defend the actions of the deceased Defendants in this lawsuit, hire attorneys for that defense, and coordinate with the other Defendants' counsel — all while working in the law office that represents Plaintiff. The Court initially denied Plaintiff's motion to amend because it was filed after the deadline to amend passed and Plaintiff failed to establish good cause or even acknowledge the deadline. Now, the Plaintiff seeks reconsideration of that decision. For the multiple reasons that follow, Plaintiff's motion for reconsideration [195] is denied.

**Background**

Before addressing Plaintiff's motion for reconsideration and the changes in his proposed Third Amended Complaint, it is necessary to understand the status quo. In the operative Second Amended Complaint, Plaintiff brings eleven counts against various Defendants related to his wrongful conviction for the murder of his ex-wife, Penny Williams.[1] Doc. [135]. While this lawsuit involves claims against numerous individual and government entities, the motion before the Court directly involves only two Defendants, the Estates of Gregory Garofalo and Nancy Jones ("Defendant Estates"). Both Garofalo and Jones died prior to the accrual of Plaintiff's claims. In the Second Amended Complaint, Plaintiff names Kimberly Garofalo, as Independent Administrator of the Estate of Gregory Garofalo, and Karen Jones, as Independent Administrator of the Estate of Nancy Jones, in place of the deceased. Doc. [135] ¶¶ 17, 24. While Garofalo and Jones are the defendants at issue in Plaintiff's amendment, Defendants Village of Gurnee and Lake County, are also relevant to this motion as Plaintiff seeks to hold them liable under various theories for damages caused by the Defendant Estates.

Sgt. Gregory Garofalo was an employee of Defendant Village of Gurnee and was the first person to interview Plaintiff in connection with Penny William's disappearance. Doc. [135] ¶¶ 29, 70. Plaintiff alleges that Sgt. Garofalo falsely attributed numerous statements to him and, at the direction of Lake County Assistant State's Attorney Michael Mermel, inaccurately supplemented his report to suggest the Plaintiff killed Penny Williams to obtain custody of their children. Doc. [135] ¶¶ 71–72.

Dr. Nancy Jones performed an autopsy on Penny Williams, provided information to ASA Mermel as to Penny Williams' time of death, and testified against Herman Williams at trial. Doc.

[1] Plaintiff's conviction was vacated on September 6, 2022. Doc. [135] ¶ 3.

[135] ¶ 24. Plaintiff alleges that Dr. Jones was a medical examiner for Cook County, Illinois, performing services for Lake County, Illinois, with respect to the autopsy of Penny Williams. *Id.* Plaintiff alleges that "Dr. Jones told ASA Mermel that she believed that Penny died anytime between the evening of Wednesday, September 22, 1993, until late Thursday, September 23 or even possibly early Friday morning, September 24, between 1:00 – 3:00 a.m." *Id.* ¶ 100. But, according to Plaintiff, at trial Dr. Jones falsely testified that the "time of death was most likely Wednesday evening, between 8:00 – 9:00 p.m." and that "she had not previously held the opinion that the death could have occurred later on Thursday or into Friday morning." *Id.* ¶¶ 106–07. Plaintiff alleges that two experts conducted a post-conviction review of the autopsy and determined that the time of death was closer to when the body was found on Sunday, September 26, 1993. *Id.* ¶ 123.

In the Second Amended Complaint, Plaintiff brings claims against the estates of Sgt. Garofalo and Dr. Jones in Count 1 (§ 1983 Claim for Deprivation of Liberty Without Due Process of Law), Count 2 (§ 1983 Claim for Unlawful Detention), Count 5 (§ 1983 Claim for Civil Rights Conspiracy), Count 6 (Malicious Prosecution), Count 7 (Intentional Infliction of Emotional Distress), Count 8 (Willful and Wanton Conduct) and Count 9 (Illinois Common Law: Civil Conspiracy).

The matter at issue here began on September 4, 2024, when Plaintiff filed an emergency motion seeking leave to amend his complaint with the proposed Third Amended Complaint, to identify Annette Huller as Independent Administrator of the Estate of Nancy Jones, and as Independent Administrator to Collect of the Estate of Gregory Garofalo. Doc. [166] at 1. Previously, the named defendant administrators were Kimberly Garofalo, as Independent Administrator of the Estate of Gregory Garofalo, and Karen Jones, as Independent Administrator

of the Estate of Nancy Jones. But these were merely placeholders and not court-appointed administrators. In his motion to amend, Plaintiff failed to inform this Court that Huller, the named administrator for both Defendant Estates, was Plaintiff's counsel's office manager for their law firm. This was raised for the first time by defense counsel at the motion hearing on September 5, 2024. Doc. [222] at 10. Plaintiff also did not acknowledge that the deadline for filing an amended complaint was May 6, 2024, or argue that he had good cause for the late filing, over four months passed the deadline, under Rule 16. The Court denied Plaintiff's motion to amend because it was filed four months after the deadline had passed, ignored the missed amendment deadline, and failed to address or provide a good cause basis for the Court to consider amending the Complaint in violation of the Rule 16 schedule. Doc. [193].

**Discussion**

Plaintiff moves for reconsideration of the Court's November 21, 2024, Order denying his motion for leave to amend his complaint and for leave to file his amended complaint *nunc pro tunc* with an effective filing date of September 3, 2024. Doc. [195]. Plaintiff contends that it was an innocent mistake that his motion failed to address the amendment deadline, that he diligently sought to re-open the estates, there is no prejudice to Defendants in granting the amendment, and that he faces irreparable prejudice if the amendment is disallowed. *Id.* Defendants dispute these claims and argue that Plaintiff has not met the standard for a motion for reconsideration and, if addressed on the merits, leave should not be granted because of Plaintiff's delay, bad faith, and the prejudice to Defendants. The Court held an oral argument on March 19, 2025, on these issues and the parties have since provided supplemental briefing as requested by the Court.

## I. Motion to Reconsider

The Court has already denied Plaintiff's motion to amend, but Plaintiff seeks reconsideration. While a district court has broad authority to reconsider an interlocutory order, such discretion is not unlimited. *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 694 n.5 (7th Cir. 2007). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (citation omitted). Such motions are generally disfavored and not the appropriate "forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id.* at 1270. "A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

In his present motion, Plaintiff opines that it "was a mistake" that his motion failed to address the amendment deadline. Doc. [195] at 1. But he contends his mistake was innocent as he was regularly and jointly reporting with the Defendants to the Court about his attempts to reopen the estates. *Id.* at 1–2. In support of this argument, Plaintiff identifies five joint status reports filed with the Court that discuss his attempts to reopen the estates. *Id.* at 2. Plaintiff also laments about the arduous process of trying to reopen the long-closed estates and the challenges of finding a representative willing to stand in for an estate, with no assets, being opened solely for the purpose of being sued by Plaintiff. However, Plaintiff fails to identify a manifest error of law or fact *by the Court* or newly discovered evidence. Doc. [195]. Instead, Plaintiff identifies only his own mistake (the failure to seek extension of the amendment deadline), not one by the Court. Plaintiff also

offers evidence that was entirely available to him at the time he filed his motion to amend to demonstrate good cause, namely the challenges with opening the estate. Under well-settled law, this information cannot be raised for the first time on a motion to reconsider. *Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) ("[A]ny arguments that he raised for the first time in his motion to reconsider are waived."). As such, the Court denies the motion to reconsider.

## II. Motion to File a Third Amended Complaint

Even if the Court were to consider the merits of Plaintiff's motion to amend, it fails. The deadline to file amended pleadings set by the Court was May 6, 2024. Doc. [64]. On May 6, 2024, Defendants Leonard Brezinski, Daniel Colin, Charles Fagan, Lake County Illinois, Michael Mermel, Dennis Pensala, and Robert Randall moved for leave to amend their answer and affirmative defenses. Doc. [121]. The parties also filed a joint status report on May 10, 2024, requesting that Defendants be given leave to file their Amended Answer; and Plaintiff be afforded fourteen days to seek leave to amend his Complaint. Docs. [123] [125]. The Court granted Defendants' motion to amend and gave Plaintiff fourteen days, until May 24, 2024, to seek leave to amend his complaint. Doc. [126]. On May 22, 2024, the Court granted Defendant Mermel's motion to dismiss and gave Plaintiff leave to file an amended complaint within fourteen days. Doc. [131]. Then on May 24, 2024, Plaintiff sought leave to file the Second Amended Complaint with the proposed complaint attached as an exhibit. Doc. [133]. The Court granted Plaintiff's unopposed motion to file the Second Amended Complaint, which was filed on May 29, 2024. Docs. [134] [135]. Despite the known issues with the closed estates of Garofalo and Jones, at no point during this period of amendments in May 2024 did Plaintiff seek to extend the deadline for filing an amended complaint past any of the above dates, and certainly not to September 4, 2024, when he attempted to amend to add the new administrator to these two estates.

When, as here, a plaintiff moves for leave to amend after the deadline for amendment has passed, a court may apply the heightened good-cause standard of Federal Rule of Civil Procedure 16(b)(4), "before considering whether 'justice so requires' leave to amend under Rule 15(a)(2)." *Freeman v. Ocwen Loan Servicing, LLC*, 113 F.4th 701, 707–08 (7th Cir. 2024) (quoting *Adams v. City of Indianapolis*, 742 F.3d 720, 733–34 (7th Cir. 2014). "[F]ailure to satisfy either rule is fatal to the motion to amend." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 852 (7th Cir. 2022) (citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011)).

Beginning with Rule 16(b)(4), Plaintiff's argument for why there is "good cause" to allow his amendment is that he had been reporting jointly with Defendants about the status of reopening the estates, he was working diligently to reopen the estates, and it would be an injustice to bar him from amending the complaint. Defendants argue that Plaintiff cannot establish good cause because he failed to provide a reason for why he did not move to extend the deadline. Doc. [200] at 5. However, according to Plaintiff, the reason his counsel failed to extend the deadline was that "counsel merely mistakenly believed that belaboring the point was unnecessary given the frequent joint reporting on the related probate litigation and the coming amendment." Doc. [202] at 3. But Plaintiff's counsel's mistake is not grounds for good cause.

"The central consideration in assessing whether good cause exists is the diligence of the party seeking to amend." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 852–53 (7th Cir. 2022). "Generally speaking, it is reasonable to conclude that a plaintiff is not diligent when he in silence watches a deadline pass even though he has good reason to act or seek an extension of the deadline." *Id.* at 853. In *Allen*, the Seventh Circuit affirmed the district court's denial under Rule 16(b)(4) when the plaintiff had received the documents underlying the new claim a month before the deadline, yet failed to move to amend or seek an extension of the deadline. *Id.* This is precisely

what Plaintiff did here. Plaintiff knew the deadline for amending the complaint was May 6, 2024—as evidenced by him asking for leave to file a Second Amended Complaint —and he knew at that time that he needed to reopen the Defendant Estates as he was trying to do that in probate court. But, like the plaintiff in *Allen*, Plaintiff did not move to extend the deadline. Plaintiff's claims that he was acting diligently in the probate court to reopen the estates do not excuse his lack of diligence in this court. Also as in *Allen*, the fact that there was an ongoing related legal dispute—there a discovery dispute, here an effort to reopen the estates—"is not a good excuse either." *Id.* The existence of the dispute in probate court establishes that Plaintiff was aware of the problem but chose not to seek an extension of the amendment deadline. The fact that the attempts to reopen the estates were referenced in the Court-mandated status reports does not excuse Plaintiff's obligation to seek a deadline extension.

After discussing his diligence in the probate court, Plaintiff then turns to the purported "irreparable prejudice" he would face if the amendment were not granted. Doc. [195] at 14–15. Plaintiff heavily relies on cases where the Seventh Circuit admonished district courts to consider the proportionality of the sanctions being handed to the parties when dismissing a complaint or considering removal when the parties made trivial oversights. *Id.* at 15; Doc. [202] at 3; s*ee Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011) ("Remand would be a disproportionate sanction for a trivial oversight, and when judges measure out sanctions they strive for proportionality."); *Rice v. City of Chicago*, 333 F.3d 780, 786 (7th Cir. 2003) (discussing the Seventh Circuit's "well-established public policy favoring hearing cases on the merits" which "dictates that the harsh sanction of dismissal be employed only as a last resort."); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) ("The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires

that plaintiff be given every opportunity to cure a formal defect in his pleading."). But these cases deal with a district court's dismissal of a plaintiff's claims, not a plaintiff's disregard of the Court's scheduling order when voluntarily moving to amend his complaint after the deadline.

Further, Plaintiff's reliance on *Joseph v. Elan Motorsports Techs. Racing Corp.* is misplaced. 638 F.3d 555 (7th Cir. 2011). In *Joseph*, the Seventh Circuit reversed the district court's dismissal of a suit finding that the proposed amended complaint did not relate back to the original complaint, and since the statute of limitations had expired, there was no claim left against the only remaining defendant. *Id.* at 558. The Seventh Circuit held that when determining whether an amended complaint relates back under Rule 15(c)(1)(C), the court must consider (1) "whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant;" and (2) "whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself." *Id.* at 559–60. The Seventh Circuit then found that despite the plaintiff's mistake in naming "Elan Motorsports Technologies Racing Corp." as the defendant, when he meant to sue "Elan Motorsports Technologies, Inc." that they were affiliated companies with actual knowledge of the lawsuit, and doubtlessly the "confusing similarity of the corporate names" contributed to the error; therefore, the complaint related back. *Id.* at 560. While Plaintiff frames what he is trying to do as simply substituting the proper party, as was done in *Joseph*, this mischaracterizes the facts, as the substitution is not as straightforward, as further described below. The Court finds that Plaintiff has not established good cause to allow the amendment under Rule 16.

Even if the Court were to find good cause under Rule 16(b)(4), the motion would still be denied under Rule 15(a)(2), which provides that "[t]he court should freely give leave [to amend]

when justice so requires." Fed. R. Civ. P. Rule 15(a)(2). Even this "general rule has its limits." *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1133 (7th Cir. 2022). "District courts 'may deny leave to amend ... where there is a good reason to do so,' such as 'futility, undue delay, prejudice, or bad faith.'" *Id.* (quoting *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 946 (7th Cir. 2020). While delay is one of the factors, the Seventh Circuit has found "that '[d]elay must be coupled with some other reason. Typically [that is] ... prejudice to the non-moving party.'" *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (quoting *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004). Even under the more lenient Rule 15(a)(2) standard, the Seventh Circuit has affirmed a district court's refusal to allow amendments when a plaintiff unduly delayed and was previously aware of the facts and legal basis for the new claim. *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 945 (7th Cir. 2024) (affirming the denial of leave to amend when plaintiff was aware of the facts and legal basis of the new claim eight months prior to the motion).

As Plaintiff notes, he does not seek to add a new legal theory or claim to his case, he is trying to amend the complaint to bring the claim against the *proper* administrator of the estate. Typically, such an amendment would not prejudice the defendants because it does not drive the proceedings in a new direction or change the claims asserted. *Allen*, 41 F.4th at 853. Further, Defendants, at least those currently involved in the case, are aware of both Plaintiff's efforts to reopen the estates and the claims against the estates. But the prejudice to Defendants comes not from the timing of the amendment, but *who* Plaintiff seeks to add as the Defendant.

A mere recitation of the underlying facts makes the prejudice to Defendants apparent. Huller is the office manager for Plaintiff's counsel's law firm. As administrator for the Defendant Estates, she would also be the representative for two Defendants in this lawsuit. Further, as there

is a conspiracy claim and Plaintiff's stated reason for suing the long-closed Defendant Estates is to have other Defendants satisfy those judgments (Gurnee and Lake County), the Defendants would need to coordinate a defense with Huller – an employee of Plaintiff's counsel's law firm. Thus, Huller would be required to defend the interests of the deceased defendants, it would also require conversations about defense strategy with Huller, all while she was working as an office manager for Plaintiff's counsel's law firm.

Plaintiff asserts that Huller's appointment does not create a conflict of interest even when considering her employment because she has a fiduciary obligation to the Defendant Estates. The Court asked the parties for additional briefing on whether such a substitution is common or appropriate under Rule 15. Despite this request, Plaintiff failed to provide any case precedent where a similar appointment was allowed. *See* Doc. [214]. Instead, Plaintiff relies on cases where the court considered plaintiffs' motions to remove defense counsel because of a potential of a conflict of interest arising from their representation of multiple defendants. *Id.* at 11–12; *see Clay v. Doherty*, 608 F. Supp. 295, 303 (N.D. Ill. 1985); *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1422–24 (N.D. Ill. 1997). On their face, those facts are easily distinguishable from the issues here as this case does not deal with the potential conflict of counsel representing multiple defendants. Further, they dealt with plaintiffs trying to remove defense counsel, not a plaintiff trying to substitute its counsel's office manager as a defendant.

Likewise unavailing is Plaintiff citations to Illinois state court cases involving motions to remove an administrator. First, the Court notes that it is not within this Court's purview to evaluate the appropriateness of Huller's appointment as administrator before the probate court. Such a decision is left with the Illinois probate and appellate courts. The sole matter before this Court is whether to allow the amendment to the complaint in this proceeding. Thus, the Court reviews

these cases to determine whether Illinois courts would consider this to be a conflict as it relates to prejudice to Defendants under Rule 15.

With that frame of reference, Plaintiff relies on *In re Kuhn's Est.* where the Illinois appellate court found that the administrator should not be removed simply for having a personal interest in the estate, because it was not an "unusual and extraordinary" circumstance. 231 N.E.2d 97, 101 (Ill. App. Ct. 1967). As the court noted, "[u]nless a bank is named as executor, the executor normally will have a personal interest in the estate." *Id.* Here, Huller does not have a personal interest in the assets of the estate, in the way an administrator who was also an heir would have. Instead, her employment with Plaintiff's counsel's law firm places her in direct opposition to the Defendant Estates. Her appointment would be more analogous to the situation the Illinois Supreme Court found "manifestly unfair" in *In re Abell's Est.*, 70 N.E.2d 252, 256 (Ill. 1946). *In re Abell* involved an estate where the sole remaining matter to be completed was the sale of real estate to pay off debts, but the individuals seeking to be appointed as administrators to complete the sale were the heirs of the estate, who had been resisting the sale. *Id.* The Illinois Supreme Court held that the heirs could not be the administrators because it would make them "both plaintiffs and defendants in proceedings to sell the land." *Id.* at 257. Similarly, if the amendment were allowed, Huller—as an employee of Plaintiff's counsel's law firm—and administrator of the Defendant Estates would place her on both sides of this lawsuit. This establishes that allowing such an amendment would prejudice Defendants.

Another significant hurdle in this case to finding an administrator is that the long-closed estates have no assets. While Plaintiff averts that he is not trying to obtain monetary damages from the estates, there remains the issue of how an administrator will fund this litigation. Estates cannot proceed *pro se*, thus an administrator would be required to hire counsel. *Ammons v. Walgreen Co.*,

2019 IL App (1st) 190081-U, ¶ 17 (Plaintiff "cannot, as a non-attorney, represent the interests of the estate in this case."). When pressed on this, Plaintiff's counsel either stated that he did not know how the administrator (his office manager) would pay for legal counsel, that she would likely not hire counsel, or that the other Defendants would simply provide counsel to her. Doc. [210] at 7–8, 13–15. But there has been no commitment from any Defendant that they will hire counsel for this estate. Doc. [210] at 28–29, 31–33; Doc. [219] at 7.

Plaintiff's argument that there is no conflict resulting from Huller's inability to pay for legal counsel because Defendants may elect to provide legal services, is unavailing. *See* Doc. [214] at 8–10. Under Illinois law, a public entity may elect to "appear and defend against the claim or action" or "indemnify the employee or former employee for his court costs or reasonable attorney's fees, or both, incurred in the defense of such claim or action" for claims instituted against an employee alleging an injury arising out of an action or omission that occurred during the scope of their employment. *See* 745 ILCS 10/2–302. If the public entity decides to exercise its statutory authority to appear and defend the employee, the employee may not decline the defense unless he can show there is an actual conflict of interest. *Ellis v. City of Calumet City*, 2011 WL 4382452, at *4 (N.D. Ill. Sept. 15, 2011). Thus, according to Plaintiff, Gurnee and Lake County[2] would have the option to provide legal counsel for the Defendant Estates, which, if they exercised, Huller could not decline. But the fact that under Illinois law public entities *may* elect to provide such a defense, does not strip from Huller the obligation to provide a defense absent their election. As the administrator, Huller "is the representative of the decedent and all those interested in the estate, such as creditors, heirs, legatees, and devisees; [she] is a fiduciary to those interested in the estate and, as such, is held to a high standard of fair dealing and diligence." *In re Est. of Wallen*, 633

[2] Lake County argues that Dr. Jones was not an employee of Lake County and was acting as an independent contractor. Doc. [219] at 7.

N.E.2d 1350, 1360 (Ill. App. Ct. 1994). As Huller is not an attorney, she cannot "represent the legal interests of an estate" in a *pro se* capacity and would have to hire counsel to adequately defend the estate's interests. *In re Est. of Mattson*, 131 N.E.3d 578, 580 (Ill. App. Ct. 2019); *see In re Est. of Knott*, 615 N.E.2d 357, 360 (Ill. App. Ct. 1993) (discussing how an administrator would be "derelict in her duty to protect the assets of the estate" if she had not defended against the lawsuit). Thus, her inability to hire counsel in this case is a serious problem.

Moreover, even if Lake County and Gurnee decided to provide a defense, that creates an unavoidable conflict as they would be required to coordinate with an employee of Plaintiff's counsel's law firm. When the Court posed the question of how the administrator of the Defendant Estates—who is an office manager at Plaintiff's counsel's law firm—would coordinate with Defendants' firms—in opposition to her employer—counsel admitted that the situation was "odd" and if he were in a similar situation, he would have someone else substituted in that role because of the conflict. Doc. [210] at 14–15, 36–37. Despite Plaintiff's claims that he is "not seeking to hijack anyone's defense" and that he did this because he "simply needs a viable Defendant[,]" Plaintiff's chosen administrator is not viable. Doc. [214] at 2. Plaintiff has never suggested how this case could practically proceed with Plaintiff's counsel's office manager acting as administrator for the Defendant Estates. In fact, Plaintiff proposes multiple times, and said he would prefer, that the likely outcome if this amendment was allowed is that Defendants would provide legal counsel for the Defendant Estates and substitute in a different administrator. Doc. [210] at 7–8, 12; Doc. [214] at 2, 6, 10. In essence, Plaintiff is asking the Court to allow this substitution of administrators to force Lake County and Gurnee into a position where they must provide legal counsel and find an alternative administrator for the Defendant Estates. Thus, despite Plaintiff's arguments to the

contrary, it is evident from these set of circumstances that the proposed amendment would prejudice Defendants.

But it is not only the prejudice to Defendants that the Court considers when evaluating Plaintiff's motion. The Court also looks at whether Plaintiff acted in bad faith when seeking to have Huller appointed and asking this Court to grant leave for the amendment. While Plaintiff spends much of his briefing lamenting the difficulties in finding and appointing an administrator, his omissions regarding his actual nominee are glaring. First, Plaintiff's counsel did not inform the probate court that Huller was an employee at his law firm when having her appointed. When the Court asked if the probate judge knew that Huller was Plaintiff's counsel's office manager when appointing her, counsel responded that the "judge certainly knows now." Doc. [210] at 39. Then in his supplemental brief, Plaintiff asserts that he listed Huller's address as the law firm address when he nominated her before the probate court. Doc. [214] at 5–6. It should go without saying, but that is not the same as informing the probate court that Plaintiff's proposed administrator for the estate, of a defendant that Plaintiff is currently suing, is an employee of Plaintiff's counsel's law firm. Likewise, Plaintiff made no mention of Huller's role as Plaintiff's counsel's office manager in his original motion to amend filed with this Court. Doc. [166]. A plaintiff's mischaracterization of the evidence used to support a motion to amend is evidence of bad faith. *See Figgie Int'l Inc. v. Miller*, 966 F.2d 1178, 1181 (7th Cir. 1992) (finding plaintiff's request to amend was taken in bad faith when the plaintiff mischaracterized the memorandum used to support his motion and failed to introduce any relevant evidence). As such, the Court finds that Plaintiff acted in bad faith when moving to amend the complaint to substitute Huller as the

administrator for the Defendant Estates, and this provides an additional reason to deny the amendment.[3]

**Conclusion**

For the reasons stated above, Plaintiff's motion to reconsider [195] is denied.

**SO ORDERED.**

Dated: May 27, 2025

Sunil R. Harjani
United States District Judge

[3] Gurnee and Kimberly Garofalo, as former Independent Administrator of the Estate of Gregory Garofalo, also argue that the amendment is futile because Huller was appointed as the administrator to collect and not a general administrator, and that defending a legal proceeding is outside of the powers of an administrator to collect. Under Illinois law, an administrator to collect has the "power to sue for and collect the personal estate and debts due the decedent or missing person and *by leave of court to exercise the powers vested by law in an administrator*." 755 ILCS 5/10-4 (emphasis added). As an administrator to collect could get leave of the probate court to obtain the necessary powers to stand in as a defendant in this litigation, the Court does not deem the amendment futile on this basis.