**EXHIBIT C**

1

```
 1              IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3   HERMAN WILLIAMS,            )  Case No. 23 C 5945
                                 )
 4                  Plaintiff,   )
                                 )
 5          v.                   )
                                 )
 6   LUCIAN TESSMANN, et al.,    )  Chicago, Illinois
                                 )  March 19, 2025
 7                  Defendants.  )  9:43 a.m.
                                 )
 8
                      TRANSCRIPT OF PROCEEDINGS
 9         BEFORE THE HONORABLE SUNIL R. HARJANI

10   APPEARANCES:
     For the Plaintiff:    HART McLAUGHLIN & ELDRIDGE, LLC
11                         BY:  MR. JOHN MARRESE
                                MS. PAIGE SMITH
12                         One South Dearborn Street
                           Suite 1400
13                         Chicago, Illinois 60603

14   For Defendant Estate  SCHAIN BANKS KENNY & SCHWARTZ, LTD.
     of Garofalo and       BY:  MR. MICHAEL E. KUJAWA
15   Village of Gurnee:    70 West Madison Street
                           Suite 5400
16                         Chicago, Illinois 60602

17   For the Lake County   THE SOTOS LAW FIRM, P.C.
     and Vernon Hills      BY:  MS. LAURA M. RANUM
18   defendants:           141 West Jackson Boulevard
                           Suite 1240A
19                         Chicago, Illinois 60604

20   Court Reporter:       JENNIFER COSTALES, RMR, CRR, CRC
                           Official Court Reporter
21                         219 S. Dearborn Street, Room 1714
                           Chicago, Illinois  60604
22                         Telephone:  (312) 435-5895
                           jenny.uscra@yahoo.com
23
                          *   *   *   *   *
24
                 PROCEEDINGS REPORTED BY STENOTYPE
25     TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
```

**EXHIBIT C**

2

1  APPEARANCES:  (Continued)

2  For Defendant Tessmann:     EKL WILLIAMS & PROVENZALE, LLC
3                             BY:  MS. TRACY STANKER
                              901 Warrenville Road
                              Suite 175
4                             Lisle, Illinois 60532

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT C**

3

1        (Proceedings heard in open court:)

2        THE COURTROOM DEPUTY:  23 CV 5945, Williams versus

3   Tessmann.

4        MR. MARRESE:  Good morning, Your Honor.  John Marrese

5   on behalf of the plaintiff.

6        THE COURT:  Good morning.

7        MR. KUJAWA:  Good morning, Your Honor.  Michael

8   Kujawa on behalf of defendant Estate of Garofalo and the

9   Village of Gurnee.

10        THE COURT:  Okay.

11        MS. RANUM:  Good morning, Your Honor.  Laura Ranum on

12   behalf of the Lake County and Vernon Hills defendants.

13        MS. STANKER:  And good morning, Your Honor.  Tracy

14   Stanker on behalf of defendant Tessmann.

15        THE COURT:  Okay.

16        MS. SMITH:  Good morning, Your Honor.  Paige Smith

17   also on behalf of plaintiff.

18        THE COURT:  Okay.  Good morning, everybody.

19        So I set this for oral argument.  I do want to hear

20   from each of you.  And I gave you about 15 minutes per side.

21   And I certainly have some questions.  Anything we need to talk

22   about before we start that process?

23        MR. MARRESE:  No, Your Honor.

24        THE COURT:  Okay.

25        MR. MARRESE:  I don't think so.

**EXHIBIT C**

4

1      THE COURT:  So, plaintiff, it's your motion, you can

2   go first.

3      And you can have a seat and you'll go next, okay.

4      MR. MARRESE:  Thank you, Your Honor.  This motion

5   obviously seeks to rename a state defendant, two of them,

6   after their estates had been reopened.  The ultimate question

7   in conjunction with plaintiff's motion for leave to make that

8   amendment is good cause.

9      Just to make it clear, the amendment does not change

10   a single allegation in the complaint.  It does not add any

11   theories of liability.  It merely changes the name of the

12   administrator on the estate for claims that have been alleged

13   since day one of the litigation.

14      To understand plaintiff's good cause for bringing the

15   motion after the Rule 16 amendment deadline in the scheduling

16   order, facts regarding what it took to get these estates

17   reopened so that we were able to rename them is really central

18   to that question.

19      THE COURT:  Yeah, I read all of that and all the

20   status reports and all the statements you made.

21      Rule 54, a motion to reconsider, is when the Court

22   makes an error, okay.  And I take no disrespect at all.  Where

23   did I err?

24      MR. MARRESE:  In a nutshell, the argument on the

25   motion to reconsider is that the basis for good cause was in

**EXHIBIT C**

5

1   the open moment, albeit more briefly than we've put in the

2   motion to reconsider, but the basis is there, you know,

3   including --

4        THE COURT:  Buried in there I had to look for good

5   cause, even though you didn't address the amendment deadline

6   and tell me why you were outside the timeframe.

7        MR. MARRESE:  We didn't mention Rule 16.  I didn't

8   mention Rule 16.  That's my mistake.  I fully own that.

9        THE COURT:  Yeah.

10       MR. MARRESE:  The basis for it, the substance of it

11  is in there, which is that since the outset of the case, we

12  have been trying, and it's been a difficult process, I know

13  you've read all that so I won't belabor it, we have been

14  trying to get these estates open.  And it was a multi-staged

15  process that, you know, we were facing difficulties with the

16  former family members getting service, identifying a new

17  administrator, and convincing the probate courts that

18  reopening estates over two years after they'd been closed is

19  something that they were lawfully allowed to do.  And so that

20  took time.  It took numerous court appearances.  It took

21  briefings.  And I know you know all this.

22       THE COURT:  So I guess I had some questions on this.

23       MR. MARRESE:  Yes.

24       THE COURT:  So the two estates, the current

25  administrator is your office assistant?

**EXHIBIT C**

1          MR. MARRESE:  Our office manager, correct.

2          THE COURT:  Okay.  So walk me through how this works.

3    In theory, I would substitute in this office manager as

4    administrator of the estates.  And then what is this office

5    manager going to do?

6          MR. MARRESE:  Not much is the truth, Your Honor.

7          THE COURT:  How do you defend the allegations then

8    against these individuals Jones and Garofalo?

9          MR. MARRESE:  That would be, of course, up to counsel

10   who would come in to represent the estate.  We would not

11   represent the estate.

12         And just to address the office manager, I can take

13   you through the history as to how we got there, which was

14   not --

15         THE COURT:  Yeah, I mean, it sounds like it was sort

16   of a last resort option, right.

17         MR. MARRESE:  That's right, that's right.

18         THE COURT:  But generally an estate will have

19   counsel, and counsel will defend the interest of the estate,

20   including ensuring that liability is not imputed to that

21   person by some sort of defense.  How is that going to happen

22   here?

23         MR. MARRESE:  Well, it would happen with counsel

24   coming in, denying the allegations in the complaint, which

25   Garofalo has already done and which presumably Jones would do

1    as well.

2           THE COURT:  Who is going to hire these lawyers?

3           MR. MARRESE:  I don't know, Your Honor.  The

4    assumption would be that the parties responsible for that

5    employee would come in to represent them.

6           THE COURT:  Right.  But there are --

7           MR. MARRESE:  They have hired counsel to deal with

8    the probate proceedings, for example, and so someone is acting

9    to engage with counsel.

10          THE COURT:  But normally, I mean, it's the

11    administrator of the estate that would hire counsel to defend

12    the interest of the individual who is deceased, right, and the

13    estate?  Isn't that normally how it would work?

14          MR. MARRESE:  Yes.

15          THE COURT:  Okay.  So you don't anticipate your

16    office manager is going to be hiring counsel for these

17    estates.

18          MR. MARRESE:  No.

19          THE COURT:  Okay.  So then who -- you're just

20    assuming that some of the defendants are going to step up?

21    And defendants, you're talking about who, like the Lake County

22    defendant, like the actual county?  Who are the lawyers who

23    are going to step up?

24          MR. MARRESE:  Well, Cook County is the former

25    employer of Dr. Nancy Jones.  It's the only reason Cook County

**EXHIBIT C**

8

1   is in the case.  And Lake County employed Nancy Jones in

2   conjunction with the autopsy that is the basis of our claim

3   against her.

4            THE COURT:  Are Cook County and Lake County

5   defendants in this case?

6            MR. MARRESE:  Yes.

7            THE COURT:  Okay.  So they're representing their own

8   interests.  And am I right that you are just making an

9   assumption that both counsel for Cook County and Lake County

10  are going to jump in and represent Jones and Garofalo?

11           MR. MARRESE:  I'm not making any assumptions about

12  how that would occur.  I don't know how that would occur.

13           THE COURT:  Okay.

14           MR. MARRESE:  But with respect to Ms. Huller, she is

15  an appropriate head of the estate.  Obviously --

16           THE COURT:  How?  I mean, how is that possible?  Like

17  explain to me how someone who works for you could be an

18  appropriate head of an estate for a defendant.

19           MR. MARRESE:  It's the ruling of the probate court in

20  terms of who is an appropriate administrator for an estate.

21           THE COURT:  Sure.  And an estate is a separate

22  entity, right?  I mean, there are a lot of things that an

23  administrator for an estate has responsibility for.  But, you

24  know, the focus of the probate court is not necessarily who is

25  defending the interest of the individual in a lawsuit where

**EXHIBIT C**

9

1   the office manager of the plaintiff is the administrator for a

2   defendant.

3           MR. MARRESE:  Well, the administrator -- it's the

4   same party.  The estate, of which Ms. Huller has been

5   appointed head, is the same party defendant here.  And there

6   are obligations that go along with that as the administrator

7   of the estate.

8           THE COURT:  But she works for you.

9           MR. MARRESE:  The fact -- well, she doesn't -- she

10  works at my law firm, yes.

11          THE COURT:  Okay.  I'm trying to wrap my head -- do

12  you see anything strange about this?

13          MR. MARRESE:  Of course.

14          THE COURT:  I mean, am I sort of just out there?

15          MR. MARRESE:  No.

16          THE COURT:  And you're saying to me:  This happens

17  all the time, Judge.  What are you talking about?

18          MR. MARRESE:  No.

19          THE COURT:  So you see this is a bit bizarre.

20          MR. MARRESE:  This is the first time for me as well,

21  Judge.

22          THE COURT:  Okay, okay.

23          MR. MARRESE:  And to take you through that process,

24  we sought to appoint all of the heirs of the particular

25  estates.  No one wanted to do it.  We even sought, we then

**EXHIBIT C**

1   sought the assistance of different individuals who didn't want

2   to do it, because the sole purpose for being named head of the

3   estate is to be sued in federal court.  Of course, not for any

4   money.  This estate is never going to be disturbed.  We can

5   never take a penny from any of these estates or disturb their

6   status quo.  The sole purpose, right, is to have a defendant

7   for judgment.

8           After that --

9           THE COURT:  And just so I'm clear on this --

10          MR. MARRESE:  Yes.

11          THE COURT:  -- the reason why you want a judgment

12   against a defendant, you think it will be satisfied by what,

13   indemnification or something like that?

14          MR. MARRESE:  Or an insurance policy, yes, Your

15   Honor.

16          THE COURT:  Okay.  An insurance policy for something

17   that happened 20 years ago that is still --

18          MR. MARRESE:  30.

19          THE COURT:  -- 30 would still pay out?  I mean, are

20   you aware of any?

21          MR. MARRESE:  Yes.  The defendants have disclosed

22   insurance provisions in the case.  No one has said those

23   actions wouldn't be covered.  I'm not an insurance coverage

24   lawyer.  I obviously don't, you know, have the ultimate

25   decision on that.  But yes.

**EXHIBIT C**

1          THE COURT:  Okay.

2          MR. MARRESE:  And we did that in conjunction with

3    reopening the estates, we had to.  We executed, I did and my

4    client, Herman Williams, affidavits that say we will never

5    seek a penny from the estate.  We will never seek to disturb

6    it whatsoever.  So that brings us to that point.

7          Then we sought the assistance of a public office in

8    Cook County, the public administrator, who sometimes steps in

9    in these types of circumstances.  I had a lot of difficulty

10   getting ahold of them, ultimately informed the Court of that.

11   And the Court said, I need a formal declination from the

12   Office of the Public Administrator.

13         To get that, I actually contacted a probate firm who

14   has dealt with them before.  They had a contact there they

15   were able to get in touch with.  We were able to file then

16   that declination in turn.  It was only then that we were able

17   to get an administrator appointed.

18         THE COURT:  Okay.

19         MR. MARRESE:  There is no doubt Ms. Huller was our

20   last resort.

21         THE COURT:  But why is she the last resort?  I mean,

22   didn't you think to yourself, oh, this would be strange if I

23   come before the Judge and tell the Judge that my office

24   manager is now representing the interest of a defendant, and

25   we don't know who is going to represent -- who is going to be

**EXHIBIT C**

1  counsel for the estates.  The Judge is going to think this is

2  a bit bizarre.

3          Like why not a firm?  I mean, I'm sure there are

4  firms or entities that specialize in these things that can be

5  retained in some fashion.  I mean, what is going on here?  Why

6  your office manager?

7          MR. MARRESE:  It would -- I think the difficulty

8  there, Judge, would be having that outside engagement with the

9  defendant.

10          THE COURT:  What do you mean?

11          MR. MARRESE:  Specifically for purposes of this

12  litigation.  So contracting with another firm to handle the

13  defense work would be different than the appointment of an

14  administrator in and of itself.

15          THE COURT:  Yeah.  I mean, here is how I see it.

16  This administrator, this office manager, is just a figurehead.

17  She's not going to do anything, is she?

18          MR. MARRESE:  Well, she would have to work with

19  counsel.  My expectation, I mean, just to speak frankly,

20  Judge, my expectation would be replacement of that

21  administrator.

22          THE COURT:  Yeah, you mentioned that somewhere.  But

23  you think for now your office manager at your firm is going to

24  work with counsel for the defendants in consulting and working

25  with them on their defense of Garofalo and Jones?

**EXHIBIT C**

1        MR. MARRESE:  The only, the only -- the answer is

2  yes.  The only consultation that would occur is an answer to

3  the complaint.  There is no discovery.  There is no witness

4  that is alive and other party to question.  They're

5  effectively not a part of -- they don't have any part in

6  discovery beyond denying -- and they don't have any liability

7  for any judgment, so --

8        THE COURT:  What do you mean?  I mean, they have to

9  answer the complaint.  So they're actually doing something in

10  court, not just sitting around doing nothing, right.  And then

11  why wouldn't the estate want to take up some kind of defense?

12        MR. MARRESE:  They would.  I would assume that the

13  estate would deny the -- any time you have an administrator

14  acting as the head for the estate, for example, Karen Jones,

15  who is the sister of Dr. Nancy Jones, who is deceased, she has

16  no personal knowledge of any of the allegations made of

17  anything regarding her sister's work or anything like that.

18        It's effectively the same with Ms. Huller.  So there

19  is no personal knowledge to provide.  There is only the

20  obligation to act in the interest of the estate upon the

21  advice of counsel, which presumably here, I don't want to

22  assume, but presumably here would be a straight denial of the

23  allegations as all other defendants have made.

24        THE COURT:  Yeah.

25        MR. MARRESE:  And that would be the end of it.

**EXHIBIT C**

14

1          THE COURT:  Why not some participation discovery?

2          MR. MARRESE:  We are not serving any discovery.

3    There is no, there is no discovery to be served upon

4    Dr. Jones.  And there is no --

5          THE COURT:  What about their obligation to serve

6    discovery, right?

7          MR. MARRESE:  Interrogatories by Dr. Jones?

8          THE COURT:  Yeah.

9          MR. MARRESE:  That would, like any written discovery

10   in a case, be crafted by the attorneys and upon --

11         THE COURT:  And participate in depositions, right?

12   Have you started depositions yet?

13         MR. MARRESE:  We have just started them.

14         THE COURT:  Just started.  So wouldn't the counsel

15   for the estate participate in those depositions?

16         MR. MARRESE:  I would assume so, Judge, yes.  They

17   certainly would have the opportunity to.

18         THE COURT:  Okay.  And then these counsels for the

19   estate, assuming they come in, their client would be your

20   office manager?

21         MR. MARRESE:  Well, no.  It would be the estate.

22         THE COURT:  The estate.  But the person they would be

23   working with is your office manager?

24         MR. MARRESE:  To the extent they were working with

25   anyone from the estate, it would be the administrator, which

**EXHIBIT C**

15

1    is our office manager, correct.

2         THE COURT:  Do you see how strange that is?  This

3    doesn't bother you?

4         MR. MARRESE:  Well, of course, I see it as odd.

5         THE COURT:  How can I possibly allow this to happen?

6    I'm just trying to wrap my head around how I can possibly

7    allow the administrator of the estate to come in and work with

8    counsel for the defendants, assuming that they step in and

9    have to consult on their defense strategies and litigation

10   strategies, give consent with your office manager?

11        MR. MARRESE:  So the question I think Your Honor is

12   posing is conflict.

13        THE COURT:  Absolutely.

14        MR. MARRESE:  And the question of conflict is wrapped

15   up in who can serve as an administrator of the estate, which

16   the probate court passes on.

17        THE COURT:  Yeah, but I don't have to allow the

18   substitution, right.

19        MR. MARRESE:  Of course not.

20        THE COURT:  Okay.  So they can be the administrator,

21   and I can not allow the substitution.  So I am trying to get

22   to another place, which is how I can possibly allow this

23   substitution.

24        Do you have any case law, let's put aside the

25   bizarreness of the factual situation, do you have any case law

**EXHIBIT C**

1   to give me that says, that supports this position you are

2   taking?  Anything that's similar, any analogous situation.

3            MR. MARRESE:  In terms of someone appointing an

4   office manager to serve as the administrator of a defendant

5   party?

6            THE COURT:  Or somebody appointing someone on the

7   plaintiff's side to serve as administrator for a defendant.

8            MR. MARRESE:  Well, just to be clear, and I think you

9   know this, but to be clear, Ms. Huller doesn't work on this

10  case, right.

11           THE COURT:  Yeah.

12           MR. MARRESE:  She's not an employee, she's not a

13  paralegal or a legal assistant who works on cases.  You know,

14  it's office management.  It's billing.  It's things like that.

15           THE COURT:  Yeah.

16           MR. MARRESE:  Judge, I'd be happy to supplement with

17  that.  I don't have one for you offhand right now.

18           THE COURT:  Right.  I mean, ultimately, look, if you

19  told me, "Here are the cases, Judge, where it says you can do

20  this," I'm happy to look at it and consider your position.

21           But right now in a vacuum I'm having a lot of trouble

22  with this concept that you are advocating, because I'm not

23  sure what's happening down the road.  I mean, so let's say the

24  county, the defendants don't step in and represent the estate,

25  okay.  What does Mr. Huller do then?

**EXHIBIT C**

1       MR. MARRESE:  She has an obligation to represent the

2  interests of the estate, which would be to respond to the

3  complaint.

4       THE COURT:  How is she going to do that?

5       MR. MARRESE:  File a response to the complaint, which

6  presumably would be based on her personal knowledge, which is

7  nothing.

8       THE COURT:  Right.  But as I recall it,

9  administrators can't appear pro se.  They've got to have

10  counsel.

11       MR. MARRESE:  You may be right about that, Judge.

12       THE COURT:  So then who does she hire?

13       MR. MARRESE:  That would be up to Ms. Huller.

14       THE COURT:  Where does she get the funds from to hire

15  counsel?  Yeah, you can see where I'm going with this.

16       MR. MARRESE:  Of course.

17       THE COURT:  None of this makes sense.  And so I'm

18  sympathetic to you.  Putting aside the reconsideration issue,

19  I understand your last resort argument.  But where you've

20  ended up at the last resort is not a very ideal place at all.

21  If you had some, you know -- obviously a family member is the

22  way to go.  That didn't work out.

23       Cook County, who I do see from time to time in cases,

24  is the better way to go.  They declined.  Was there a reason

25  they declined?

**EXHIBIT C**

1      MR. MARRESE:  No.  They didn't respond to my

2  inquiries on the matter.  And then I had another law firm who

3  had a contact there from prior dealings reach out, and they

4  didn't provide any basis.  They just refused to -- or I don't

5  know if they refused, but rejected the request.  I'd be happy

6  to go back.

7      THE COURT:  Does the probate -- this is just out of

8  curiosity.

9      MR. MARRESE:  Yes.

10      THE COURT:  Does the probate court have some ability

11  to have Cook County appear before them?  I mean, that's sort

12  of their responsibility sometimes is to step in as

13  administrator.  Does the probate court have any authority to

14  do that?

15      MR. MARRESE:  I'm not sure about the authority.  I'm

16  not aware that they have the obligation to do that, but they

17  may be able to do that.  I don't know the answer to that.

18      THE COURT:  Okay.

19      MR. MARRESE:  The judge did not in our back and forth

20  on this -- to be frank, the requirement to file the

21  declination was a surprise to me because it's not part of the

22  typical process.  Perhaps --

23      THE COURT:  Okay.

24      MR. MARRESE:  -- given the circumstances it was

25  required.  In our discussion on it, the judge never said

**EXHIBIT C**

1    anything about I can, you know, force this or I can -- there

2    was never anything like that.  It was like if they're refusing

3    to participate, I need to see that with a filing.  So that was

4    all.

5         THE COURT:  Okay.  So tell me now where are we with

6    the probate court?  I was trying to read between various

7    briefings and different perspectives of where we are.  One

8    seems to be on appeal.  The other one seems to be on a motion

9    to reconsider.  That's what I read, but you tell me.

10        MR. MARRESE:  That's correct.  So the Jones estate,

11   which is in Cook County, Lake County came in and filed a

12   motion to vacate the appointment or reconsider.  And that has

13   been fully briefed, and the judge has set that for status in

14   May presumably -- well, I don't want to speak for why, but the

15   judge is aware of the proceedings here.  The judge is aware

16   that we are briefing this issue before Your Honor.  That's

17   Cook County.

18        And then in Lake County, the Estate of Garofalo came

19   in and moved to vacate or reconsider that order.  And the

20   Judge denied their motion.  They have since filed an appeal.

21   That was about, the appeal was filed about, it's close to 30

22   days ago.  There has been no briefing on the issue yet.

23        Apparently there is probate counsel who is involved

24   for Ms. Garofalo in that case who is, as I understand it,

25   seeking to -- I'm sorry, what is it called -- seeking to

**EXHIBIT C**

20

1   create a bystander's report, which I'm not familiar with, but

2   it's something to supplement the appellate record in that

3   case.  So that's where they are there.

4          I will note that the conflict issue was not raised in

5   Garofalo by probate counsel and is really not the thrust of

6   any argument by Lake County in the Cook County probate court.

7          THE COURT:  Okay.  So I did see there is some other

8   more convoluted probate type arguments which I'm not familiar

9   with because that's not the kind of work I did.  But can you

10  summarize for me, in that one case on appeal, what are the

11  appellate issues being raised?

12         MR. MARRESE:  Well, it's only a notice of appeal thus

13  far, so I don't really have a good sense of what those issues

14  will be.  But the issue there, and my colleague Paige Smith

15  will correct me if I am wrong, at the trial court level had to

16  do primarily with we filed an emergency motion for interim

17  appointment in Lake County basically while -- because

18  Ms. Garofalo hadn't given us an answer yet on whether she

19  would serve as the estate head, and she had participated in

20  this case of course throughout, and so we didn't have an

21  answer from her on that yet, so we -- it's an independent

22  administrator letters to collect or something like that.

23         But the point is it's an interim appointment in the

24  meantime while awaiting the response from the family as to

25  whether or not they were going to serve.  It doesn't seem now

**EXHIBIT C**

1   obviously that they're going to do that since there has been

2   an objection.  Well, I shouldn't say.  I don't know what

3   they'll do down the road, but they're certainly objecting and

4   appealing.

5           THE COURT:  Okay.  At the end of this we'll talk

6   again about maybe getting some supplemental briefing.

7           MR. MARRESE:  Okay.

8           THE COURT:  But let me talk to your opposing counsel

9   for a moment.

10          MR. MARRESE:  Thank you, Your Honor.

11          THE COURT:  Thank you.

12          Okay.  Tell me who each of you are speaking for.

13          MS. RANUM:  Good morning, Your Honor.  I'm here on

14  behalf of the Lake County defendants.

15          THE COURT:  Okay.

16          MR. KUJAWA:  And I'm here on behalf of Garofalo and

17  Gurnee.

18          THE COURT:  Okay.  Lake County, when you say Lake

19  County defendants, tell me who that is.

20          MS. RANUM:  I represent Lake County, the Lake County

21  sheriff.  There are several sheriff deputies.  I apologize,

22  I'm going to try to get them all.  I believe it's Brezinski,

23  Colin, Pensala, and Fagan.  And then I represent the Village

24  of Vernon Hills and Richard Davies.  Hopefully I remembered

25  everybody.

EXHIBIT C

22

1           THE COURT:  Okay.  Same question.

2           MR. KUJAWA:  Yes, so we are representing the Estate

3      of Garofalo and the Village of Gurnee.

4           THE COURT:  Okay.  And you've been representing the

5      Estate of Garofalo for some time, is that right?

6           MR. KUJAWA:  We filed our first answer to the

7      complaint on November 13th of 2023.

8           THE COURT:  Okay.  And has there been an

9      administrator since the time you entered the case as counsel?

10          MR. KUJAWA:  No, not a proper administrator.  We, in

11     fact, in our answer, we denied that Kim Garofalo was the

12     legally appointed party administrator for the estate and

13     indicated that the estate has been closed for several years

14     now --

15          THE COURT:  Right.

16          MR. KUJAWA:  -- in each answer that we filed, we

17     filed three of them since the inception of this case,

18     notifying plaintiff that they didn't have a proper,

19     administrator, and really the Estate of Garofalo is not really

20     a proper party, but we are linked to them because he's a

21     former employee of the Village of Gurnee.

22          THE COURT:  Okay.  And tell me, I'll let you get to

23     your argument in a second, I'm just trying to get my bearings,

24     tell me why you stepped in.  You know, when I look at counsel

25     here, you have identified yourself as counsel for Garofalo,

**EXHIBIT C**

23

1    why did you step in in that capacity when it wasn't a proper

2    party?

3            MR. KUJAWA:  Well, because really Garofalo's

4    involvement in this case is simply as a conduit to try to get

5    to Gurnee.

6            THE COURT:  But it's not a *respondeat superior*,

7    right?  Isn't there a *Monell* claim against Gurnee?

8            MR. KUJAWA:  No, there is no *Monell* claim.

9            THE COURT:  There is no *Monell* claim, okay.

10           MR. KUJAWA:  They have some 1983 claims and some

11    state law claims against Garofalo directly.

12           THE COURT:  Okay.

13           MR. KUJAWA:  And then the only counts against that

14    bring in Gurnee are *respondeat superior* under state law and

15    then indemnification.  So they're just using Garofalo to get

16    to Gurnee.

17           THE COURT:  I see.  Indemnification would be on the

18    1983 in particular in theory?

19           MR. KUJAWA:  Yes.  And that is why they keep talking

20    about the fact that they're not seeking anything from the

21    estate.  In fact, they've signed agreements or affidavits or

22    something saying we're not going to seek anything from the

23    estate, because it's simply a placeholder to get to them, for

24    them to get to Gurnee.

25           And from so from Gurnee's perspective, we wanted to

**EXHIBIT C**

24

1    be in the case.  We couldn't sit on the sidelines and wait,

2    and so that's why we filed that appearance.  But we made it

3    very clear that Kimberly Garofalo was not the party, the

4    legally appointed party administrator and that the estate had

5    been closed.  The estate was closed in June of 2017.

6         So any reasonable inquiry into that done even prior

7    to filing suit, which was August 23rd of '23, would have found

8    out that the estate was closed.

9         THE COURT:  Yeah, okay.  So who wants to go first, or

10   is one of you speaking for the other?

11        MS. RANUM:  I think we have some arguments that

12   overlap and then there is some specifics with --

13        THE COURT:  So why don't you go first.

14        MS. RANUM:  Sure.

15        THE COURT:  But you heard a lot of my questions to

16   opposing counsel, so if you can focus on that.  I do want to

17   get some of your thoughts on those questions.

18        MS. RANUM:  Absolutely, Your Honor.  So I guess to

19   begin, your first question to counsel was:  How did I err?

20   And I think the reality is that we are here, and I know you

21   want to address the merits as well, I'm prepared to do that,

22   but we are here on a motion to reconsider.

23        And you're absolutely correct that the standard on a

24   motion to reconsider is whether there was a manifest error

25   committed by the Court.

**EXHIBIT C**

1          What plaintiff has essentially conceded is that his

2     counsel made an error.  They filed a motion to amend their

3     complaint.  They did not address that the deadline had lapsed.

4     They did not address that Rule 16 governed their motion.  They

5     did not address good cause or why they had good cause.  And

6     that error cannot be imputed on the Court.

7          The Court was absolutely correct in its November

8     ruling in finding that no good cause had been demonstrated by

9     virtue of the fact that it wasn't even addressed in the

10    motion.

11         Now, if you turn to the actual merits, if good cause

12    had been addressed in that motion, counsel has spent a lot of

13    time in the briefing and a lot of time again here today

14    talking about it took almost a year to get this done.  And I

15    think it's different for the two estates.

16         But with regard to Jones, the first filing I believe

17    was made in January of 2024, and I think the order came

18    through in the probate proceeding that allowed him -- that in

19    his mind allowed him to move to amend here in August of 2024,

20    so eight months.

21         What counsel has never addressed to this day is why

22    it took 16 months to get that process started.  Herman

23    Williams was released from prison and the charges were dropped

24    in September of 2023.  That process didn't start until January

25    2024.

**EXHIBIT C**

1   Everyone knew that -- the plaintiff knew that

2   Ms. Jones was deceased, it had come up in the course of the

3   post-conviction proceedings, and knew that Mr. Garofalo was

4   deceased.  And instead of proactively proceeding if they

5   intended to sue these two decedents, they went ahead and just

6   put fictional parties in their complaint.  There was no estate

7   opened for either defendant, and plaintiff was well aware of

8   that.

9   And there is no explanation and absolutely no

10  diligence can be shown where it takes 16 months to even get

11  that process started.

12  THE COURT:  And your 16 months, give me the start

13  dates again that you are looking at.

14  MS. RANUM:  September, so I believe it's September

15  6th, but in September 2023 was when the charges were dropped

16  against Herman.

17  MR. KUJAWA:  2022, I believe.

18  MS. RANUM:  You're right.

19  I'm sorry, September 2022 was when the charges were

20  dropped.

21  THE COURT:  Okay.

22  MS. RANUM:  January 2024 was when counsel represented

23  in the joint status reports that he had moved to open the

24  estate --

25  THE COURT:  Okay.

**EXHIBIT C**

1     MS. RANUM:  -- in Jones.

2     THE COURT:  Okay.  I think you had said 2023.

3     MS. RANUM:  I apologize if I got the years mixed up.

4     THE COURT:  That confused me a little bit.

5     MS. RANUM:  September 2022 to January 2024, there is

6  no activity in the Jones probate proceeding.

7          And then this might be a good place for Mr. Kujawa to

8  jump in, because I believe the dates are different for

9  Mr. Garofalo.

10     MR. KUJAWA:  So there is a lot certainly in the

11  motion for reconsideration and in an attempt by plaintiff to

12  explain all of the work that it took and everything they had,

13  all the hoops they had to jump through in terms of the

14  probate.

15          There was nothing done related to Garofalo in this

16  case until August 6th of 2024.  The complaint was filed August

17  23rd of 2023.  We filed our first answer in November of '23,

18  denying that the estate was -- that Kimberly Garofalo was the

19  legally appointed administrator, informing them the estate was

20  closed in case they didn't know at this point in time.

21          Since then we filed two different answers stating the

22  same thing as it relates to the estate.  But all of those

23  joint status reports in which counsel says, Oh, well, we were

24  regularly informing the Court of our work towards appointing,

25  you know, getting these estates reopened, none of those --

EXHIBIT C

1    they're all silent as to Garofalo.  There was no mention of

2    what they were doing regarding Garofalo because nothing was

3    being done.

4          The deadline to amend came and went on May 6th of

5    2024.  Nothing done at that point in time.  It wasn't until

6    August 6th of 2024 that there is finally a petition filed in

7    Lake County to reopen the Estate of Garofalo.

8          And then because they couldn't get a hearing date

9    prior to the two-year statute of limitations date, they waited

10   until August 27th and went in and filed an emergency motion to

11   get it heard right away, and that's how they got the

12   appointment of the administrator of Ms. Huller.

13         And they did that, again, without proper notice to

14   Ms. Garofalo, Kimberly Garofalo.  And we believe that was done

15   improperly and that's why it's up on appeal.

16         THE COURT:  I see, okay.  Talk to me about the status

17   of the office administrator.  Has the --

18         MR. KUJAWA:  Well, I mean, by doing this, they've

19   essentially hijacked our case.  I don't know what we're

20   supposed to do with -- if this is allowed to go forward.

21         THE COURT:  Right.  So walk me through, you saw my

22   questions, how would this work?  Hypothetically, just

23   hypothetically, if I said, okay, for Garofalo, and the office

24   administrator is now substituted in as administrator of the

25   Estate of Garofalo, what would your obligations be at that

**EXHIBIT C**

1 point?

2   MR. KUJAWA:  Well, I mean, there is a lot of layers

3 of people involved, decisionmakers who would have to be

4 consulted on this.  I think we might have to withdraw our

5 appearance on behalf of the Estate of Garofalo, because I

6 don't know that Ms. Huller is going to be able to pay for the

7 defense or that we can communicate with her with any sense of

8 confidentiality in terms of talking about decisions that need

9 to be made.

10   I mean, everything from answering discovery to

11 issuing discovery to are we going to attend a settlement

12 conference if something like that comes up all that needs to

13 be run by the client.  And the voice piece, the mouthpiece for

14 the client is now someone who is sitting over in plaintiff's

15 attorney's office.  So how can we possibly move forward with

16 that arrangement?  I believe --

17   THE COURT:  Yeah.  What is your response to this

18 concept that, you know, you are representing Gurnee and so you

19 don't really need to deal with Ms. Huller that much?  What is

20 your take on that?

21   MR. KUJAWA:  Well, that's certainly a convenient

22 answer for the plaintiff, but the truth is we do.  We have

23 two -- there is two separate parties here.  And yes, we are,

24 we are dealing with Gurnee, but Gurnee is not even in this

25 case without the conduit of Garofalo.

1       And so of course there are things that we're going to

2 need to work with the administrator on, which we're not going

3 to be able to do with this particular scenario.  And this,

4 it's an emergency of plaintiff's own creation, especially with

5 Garofalo, when they did absolutely nothing in the year between

6 filing their complaint and filing their motion to reopen the

7 estate in August of 2024.  One full year they did nothing.

8 They never reported to the Court.

9       They never said -- the first communication that

10 counsel attaches to one of his briefs is an email chain in

11 which he reaches out on August 14th of 2024 and says, Hey, you

12 know, we had this conversation.  Do you think Kimberly will

13 step in and let us reopen the estate?

14       And so counsel makes a couple of statements in --

15       THE COURT:  Can I pause here.  I have a couple more

16 questions for you, but I don't want to keep the marshals

17 waiting.

18       MR. KUJAWA:  Sure.

19       THE COURT:  I might take -- is everyone here for the

20 criminal case?  The government is, defense is?  Okay.

21       Do you mind if I just take 10 minutes --

22       MR. KUJAWA:  No problem.

23       THE COURT:  -- 5 minutes with them and I'll come back

24 to you?

25       MS. RANUM:  Sure.

**EXHIBIT C**

1          THE COURT:  Thank you.

2       (The Court heard another matter on his call.)

3          THE COURT:  Okay.  You can recall.

4          THE COURTROOM DEPUTY:  Recalling case number

5  23 CV 5945, Williams versus Tessmann.

6          THE COURT:  Okay.  Let me finish up with them, and

7  I'll give you a chance for rebuttal.

8          MR. MARRESE:  Thank you.

9          THE COURT:  Thank you.

10         Okay.  So I spoke to you a bit, Mr. Kujawa.

11         But I did want to get with respect to Dr. Jones, have

12  you stepped in for Dr. Jones in any fashion in this case?

13         MS. RANUM:  We have not, Your Honor.  We have never

14  appeared for her.  We never stepped in for her.  And with

15  regard to the probate proceeding, Lake County intervened as an

16  interested party because of the threat from plaintiff's

17  counsel that there would be -- that they would potentially

18  seek indemnification against Lake County.

19         THE COURT:  Okay.  So Dr. Jones in theory would be

20  indemnified by Lake County?

21         MS. RANUM:  No.

22         THE COURT:  No?

23         MS. RANUM:  So plaintiff has indicated that they

24  might seek indemnification from either Cook or Lake County.

25  She was employed by Cook County.  So I anticipate that if at

**EXHIBIT C**

1   some point she is substituted in this case, it's going to be

2   an issue in this case, indemnification will be.

3          THE COURT:  Okay.  She was employed by Cook County?

4          MS. RANUM:  She was.

5          THE COURT:  Did she work for Lake County?

6          MS. RANUM:  She did this particular autopsy for Lake

7   County.

8          THE COURT:  I see, okay, all right.  I'm so wrapped

9   up in this Rule 15 issue that I don't even know what the

10  underlying facts are, you know.  That's the interesting part

11  about this, what is this case actually about?

12         So tell me then, you haven't stepped in for her, do

13  you bear any -- if Dr. Jones is found liable hypothetically,

14  do you bear any liability?

15         MS. RANUM:  So that's a very difficult question,

16  Judge, to talk about in a vacuum.  I believe that, I believe

17  there will be a fight about indemnification.  So I guess I'm

18  not admitting indemnification, but I believe that plaintiff

19  will argue that either Cook or Lake should be responsible for

20  her.

21         And I don't know what our ultimate position will be

22  on that, though I anticipate at this point that our argument

23  would either be that Cook should be indemnifying her or that

24  neither county needs to indemnify her because she had a

25  consulting business.

**EXHIBIT C**

33

1    THE COURT:  Okay.  Hypothetically, if Ms. Huller is

2  allowed in as administrator of the estate of Dr. Jones, will

3  you be stepping in to represent the interests of the estates?

4    MS. RANUM:  I don't know the answer to that, Judge.

5  Part of why we sought to intervene in the probate proceeding

6  was because of Ms. Huller being appointed, the concern that

7  there could be some sort of admission of indemnification or,

8  you know, a failure to adhere to what the duties of an

9  administrator would be given the direct conflict of interest.

10    So if a proper administrator was appointed, I think

11  there would have to be discussions between the counsel for

12  Cook County, who aren't here today.  The Cook County State's

13  Attorney's office has appeared in the case, but they did not

14  join our motion in the probate court.  They decided to wait it

15  out and see what happened with our motion.

16    So if the estate were properly substituted in to this

17  case, there would have to be a discussion between Lake County

18  and Cook County and potentially whoever the administrator was

19  about how we would proceed.

20    THE COURT:  Right.  Because, I mean, walk this out

21  with me, if neither Cook County and Lake County stepped in,

22  Ms. Huller would have to find a way to hire counsel, I don't

23  know with what money, and if she doesn't, I'm pretty sure you

24  can't proceed pro se in federal court as administrator.

25    MS. RANUM:  That's right.

**EXHIBIT C**

34

1    THE COURT:  You're basically heading for default

2 judgment?

3    MS. RANUM:  That's our concern.

4    THE COURT:  And then you'll be stuck with fighting

5 indemnification.

6    MS. RANUM:  That's our concern, that we could end up

7 in a situation where it's not vigorously defended, including

8 the indemnification piece.  So now we're arguing about

9 indemnification when we never should have even potentially

10 gotten there on liability to begin with.  Someone needs to be

11 vigorously defending liability, and then the defendants can

12 fight about indemnification if necessary.

13    THE COURT:  Okay.  All right.  Am I missing here

14 anything here with my questions?  Is there something, some law

15 out there that says this is okay?

16    MS. RANUM:  No, Judge.  And that was the only thing I

17 wanted to add, when you asked counsel, Are there cases that

18 say that I can do this? the only thing I will say to you is

19 that this is just a direct conflict of interest.  And we did

20 cite a case in our brief that was cited in the probate

21 briefings as well that just talks about the fact that in order

22 to be a suitable administrator, you can't be adverse to the

23 estate.  And I don't know how you can argue that there isn't

24 an adverse interest here when Ms. Huller is employed by Herman

25 Williams' law firm.

**EXHIBIT C**

1          THE COURT:  Okay, all right.  Anything either of you

2     want to add in your time left in argument?

3          MS. RANUM:  I don't believe so.  At this point we

4     would rest on our briefings.

5          MR. KUJAWA:  We've covered it, yes.

6          THE COURT:  All right.  Thank you very much.

7          MS. RANUM:  I apologize for getting the dates wrong,

8     Judge.

9          THE COURT:  No problem.  I knew there was something

10    there.

11          Go ahead, if you have some rebuttal, you may, or not.

12          MR. MARRESE:  Thank you, Judge.

13          Really I'm here to the extent that if you have

14    additional questions, I'm happy to answer them.

15          On the conflict issue, again, having been appointed

16    as head of the estate, Ms. Huller has an obligation to act in

17    the interest of the estate.  And if she did not, let's say she

18    walked in and just admitted all the allegations, this horrible

19    scenario that counsel presents, she would be removed as

20    administrator of the estates, and it would be void as an act

21    in violation of the oath.

22          THE COURT:  But I guess an administrator can -- I

23    want to be clear on this.  The administrator can say, this

24    office manager, "I am now the administrator, but I have no

25    funds to hire counsel, so I'm not going to do anything."  And

**EXHIBIT C**

36

1   as a result default judgment will be entered against the

2   estate.

3         MR. MARRESE:  I don't believe -- well, there would be

4   a question, Your Honor, whether that would be someone who was

5   representing the interests of the estate.  As an

6   administrator, I don't think you can sit back and just let

7   something adverse to the estate occur.  And if that were to

8   occur --

9         THE COURT:  Who would be bringing motions before the

10  probate court complaining about this?

11        MR. MARRESE:  Lake County, as they have now.

12        THE COURT:  Yeah.  So why would I let that scenario

13  play out later when I can address it now?  Because that's the

14  way it seems like it's headed.  There is no money from

15  Ms. Huller to hire counsel.  Am I right?

16        MR. MARRESE:  I assume so.  I don't know the answer,

17  but I assume so.

18        THE COURT:  Okay.  And it's hard for me to see these

19  folks representing the estate and having to consult with an

20  office manager on the plaintiff's side firm.

21        I mean, if I asked you, you know, your client now is

22  the defendant's paralegal, go fight hard and consult with your

23  client, the defendant's paralegal, what would you think about

24  that?

25        MR. MARRESE:  Can I, can I tell you what I would do?

**EXHIBIT C**

37

1       THE COURT:  Yeah.

2       MR. MARRESE:  I would call them up and say, Let's

3   substitute someone in who's, you know, aligned with my side

4   more, that's easier for me to communicate with or alleviates

5   any concerns.  I mean, this happens in a lot of cases.

6       THE COURT:  Substitute in somebody else as

7   administrator?

8       MR. MARRESE:  Yes.

9       THE COURT:  Okay.  But --

10      MR. MARRESE:  Which we've, and I know you know this,

11  but we've requested that.  We would love anyone to come in, I

12  mean, even the Office of the Public Guardian --

13      THE COURT:  Yeah.

14      MR. MARRESE:  -- so as to avoid, you know, the

15  concerns that you are raising.

16      THE COURT:  Did the probate judge have any other

17  options for you?  I mean, has this issue come up before the

18  probate judge?

19      MR. MARRESE:  I will tell you it surprises me.  I

20  mean, probate law is a function of state law, and so it's

21  different in every state when you are dealing with a case like

22  this, which presents kind of a novel issue.

23      And the answer is -- the issue is pretty novel, or it

24  is novel.  The probate lawyer for Dr. Jones's estate, I served

25  that administrator with the complaint.  The probate lawyer

**EXHIBIT C**

38

1   eventually reached out to me, and I talked with him.  And he's

2   been a probate lawyer for 45 years, has his own probate law

3   firm and has practiced in that courthouse, and his initial

4   reaction to me was, Hey, even if I wanted to help you out here

5   or agree with you, you're just too late.  Anything filed after

6   two years post an estate closing, the statute of repose bars

7   it.  So I'm sorry.

8           He had never dealt with the issue that we eventually

9   raised with the Court, which is there is an exception where

10  you're seeking as a creditor basically to come in only to seek

11  some kind of recovery from an indemnification agreement or

12  insurance policy.  He hadn't been presented with that issue

13  before.

14          We did the research on this of course in conjunction

15  with briefing the issue before the probate court in Cook

16  County, who had questions about it, because he hadn't seen the

17  issue before, and there is not case law on this issue, a lot

18  of it.

19          The one case -- there is a few cases that we cite

20  that are relevant, none of them precisely the issue here.  One

21  of them has to do with a man who had murdered his wife, and it

22  was found out, it's the Drew Peterson case, it was found out

23  after the estate had been closed that he may have been

24  responsible, you know, and he had been appointed

25  administrator, he may have been responsible.  So they

**EXHIBIT C**

1   permitted, you know, that estate to reopen.

2           The point is it's relatively rare fact patterns, like

3   our case, like a wrongful conviction case, which --

4           THE COURT:  You tell me, did the probate judge, this

5   is another question I have, there is some dispute among the

6   briefing, in either situation, Garofalo, Jones, did the

7   probate judge know that the administrator he or she was

8   appointing was your office manager?

9           MR. MARRESE:  Upon their initial appointment?

10          THE COURT:  Yeah, whenever the appointment happened.

11          MR. MARRESE:  The judge certainly knows now.  It's an

12  issue that's being briefed before him.  I don't know the

13  answer to that question because the probate -- and I genuinely

14  don't.  There certainly wasn't a back and forth debate about

15  it.

16          THE COURT:  Right.  Yeah, I mean, there is no

17  discussion about it.  I'm imagining he didn't know, right?

18  You're just presenting Ms. Huller and he signs off on it.

19          MR. MARRESE:  Well, the reason I say that is because

20  it was a lot of steps to get to Ms. Huller in terms of family,

21  public guardian.  We had sought additional people to come in

22  as administrator.  It didn't work out.  So we had to come to a

23  status and say, we're appointing, you know, this person next

24  time around because we had no luck with, you know, the folks

25  we've reached out to.

**EXHIBIT C**

40

1        And I don't -- I just don't know if it ever came up

2   there.  But it wasn't, it wasn't a point of briefing.  It

3   wasn't --

4        THE COURT:  Okay.

5        MR. MARRESE:  -- you know, a lengthy discussion.  So

6   I think your general thought about how that works is correct.

7        THE COURT:  Okay.

8        MR. MARRESE:  Because there are particular

9   requirements under probate law in terms of who can serve, over

10   18, no felonies.  You know, it's not a heavy duty requirement

11   list, which again I go back to no one is really raising the

12   conflict issue as a function of probate law.

13        THE COURT:  Yeah.  And that doesn't -- and here is

14   where I wanted to get to, which is I'll give you a chance to

15   supplement your briefing if you'd like.

16        MR. MARRESE:  Okay.

17        THE COURT:  But I do have discretion under Rule 15 to

18   substitute parties.  And what I want to see is how under Rule

19   15 this would be appropriate, not so much probate law.  I've

20   recognized that a probate judge has substituted it in.  I know

21   it's being challenged.

22        But nevertheless, as of today, Ms. Huller is the

23   administrator of both estates, am I right about that?

24        MR. MARRESE:  That's right.

25        THE COURT:  Okay.  And there is an order that says

**EXHIBIT C**

41

1   so.  Okay.

2          But what I want really want to focus the discussion

3   on or your supplemental briefing and case law is how this is

4   appropriate under Rule 15 under federal procedural law to

5   substitute in someone like this when in the context of a

6   potential conflict of interest, okay.  So if you can do that,

7   I'd like to take a look at it.  I don't want to make a

8   decision in a vacuum.  I don't want to make it because it

9   looks a bit bizarre.  I want to see what the law is.

10         We never drilled down to that issue in the briefing

11  to the extent that I would like, so I'll give you a chance to

12  do that.  So how about two weeks?

13         MR. MARRESE:  Yes, Judge.

14         THE COURT:  Okay, all right.  So what's two weeks

15  from now?

16         THE COURTROOM DEPUTY:  April the 2nd.

17         THE COURT:  April 2nd.  Okay.

18         And I'll give you a chance to respond obviously.  So

19  two weeks from that.

20         THE COURTROOM DEPUTY:  The 16th.

21         THE COURT:  Okay, May 16th.  And that should be

22  enough.  One supplemental brief from each side is enough for

23  me.

24         MR. MARRESE:  And you had said April 16th for their

25  response?

**EXHIBIT C**

1         THE COURT:  May.

2         MR. MARRESE:  May.  You said May 16?

3         THE COURT:  Yeah.

4         MR. MARRESE:  I thought it was two weeks after April

5  2nd.

6         THE COURTROOM DEPUTY:  April, April 16th.

7         THE COURT:  Oh, April.  I'm getting my dates mixed

8  up.  So the first one is what?

9         THE COURTROOM DEPUTY:  April 2nd.

10         THE COURT:  April 2nd, that's it.  And then April

11  16th.  Okay.  So one set of briefs is enough for me.

12  Specifically address the federal procedural issue and whatever

13  conflict law is associated with Rule 15 for me to make a

14  decision on that basis, if I get to the merits of your motion.

15  Okay.

16         MR. MARRESE:  Thank you, Judge.

17         THE COURT:  Okay.  Anything else?

18         MR. MARRESE:  One other issue.  And we don't have all

19  defense counsel here today.  You had set an in-person status

20  hearing for April 2nd.  And we are trying to schedule quite a

21  bit of depositions.  We have one set that morning.  I was

22  wondering if we could pivot to a telephonic or move it to

23  another day.  But we don't have all defense counsel here to

24  kind of weigh in on that.  I raised the issue by email with

25  them.  Nobody objected.  It's just to allow us to get that

**EXHIBIT C**

43

1    deposition done essentially.

2          THE COURT:  Let me take a look.  Usually my in-person

3    status hearings are after discovery is closed.  If discovery

4    is not closed, usually you'll get an order that moves it.

5          MR. MARRESE:  Okay.

6          THE COURT:  I'm trying to see where on the docket

7    that was set.  So give me a second here.

8          Marlan, do you see where, sometimes it's highlighted,

9    where my next status is?  Give me a second.

10          I see, here we go.  Yeah, I will reset that to

11    sometime after the depositions, because at that point I want

12    to have more substantive discussion about the case.  So we'll

13    reset that.  Okay.

14          MR. MARRESE:  Thank you, Judge.

15          THE COURT:  Thank you both.  That was very helpful.

16          MR. MARRESE:  Thank you.

17          MS. RANUM:  One thing I did forget to bring up when

18    we were talking about the potential of a default judgment and

19    how that could impact an indemnification claim for Lake

20    County.

21          There is another issue that I meant to address that I

22    believe I raised last time we argued this, which is that

23    Ms. Jones is accused of being in a conspiracy with all the

24    defendants to violate Mr. Williams' rights.

25          So a default judgment on the conspiracy claim could

**EXHIBIT C**

1  have ramifications for every defendant in the case, and I just

2  wanted to raise that as an additional issue.

3          THE COURT:  Okay, all right.  Understood.

4          Okay.  Thank you, everybody.  Appreciate it.

5      (Proceedings concluded at 10:39 a.m.)

6

7                          *  *  *  *  *

8          I certify that the foregoing is a correct transcript

9  from the record of proceedings in the above-entitled matter.

10 */s/Jennifer Costales*              *March 24, 2025*
   _____         _____
11 Jennifer Costales                   Date
   Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25